UNITED STATES of America, for the Use and Benefit of MILLER & BENTLEY EQUIPMENT COMPANY, Inc., Plaintiff,

v.

James H. KELLY (Kelley), United Pacific Insurance Company, Maurice Ramage and Fred Ayala, Defendants.

Civ. No. 10661.

United States District Court
D. Alaska,
Fairbanks.

March 31, 1961.

Charles E. Cole, Fairbanks, Alaska, for plaintiff.

Richard D. Nelson, Portland, Or., and McNealy, Merdes & Camarot, Fairbanks, Alaska, for defendants Kelley and United Pacific Ins. Co.

HODGE, District Judge.

Plaintiff brings this action under the provisions of the Miller Act, 40 U.S.C.A. § 270b, against the defendant James H. Kelley as contractor, the defendant United Pacific Insurance Company as surety upon the contractor's payment bond, and the defendants Maurice Ramage and Fred Ayala as subcontractors, for equipment rentals, materials and services claimed furnished and rendered by the use plaintiff to the defendant subcontractor in the prosecution of work under a contract between the United

States of America and the defendant contractor for the clearing of property of the United States near Clear Air Force Station, Clear, Alaska, in the amount of $45,681.81. The prime contract was executed on or about October 21, 1958, and the payment bond was executed by defendant surety on the same date. Thereafter the contractor entered into a subcontract with Ramage and Ayala whereby the subcontractors agreed to perform a portion of the work covered by the contract, which the subcontractors undertook to perform.

Plaintiff furnished to defendants along with statutory notice of claim itemized schedules representing the amounts claimed, including a statement of "Rental account" covering rental claimed on a gas heater, a Hobart electric welder, a Kohler light plant, a GMC boom truck, an International TD–24 tractor with blade, a Caterpillar D–8 tractor with angle dozer and blade, a rake blade for the D–8 tractor (belonging to one Woody Fuller) and other minor equipment, covering a period between October 28, 1958, and April 22, 1959; also a statement of "Merchandise furnished" the subcontractor, consisting largely of materials and supplies, and statements of "Merchandise and services" paid for by plaintiff and "Services performed" by plaintiff for the Ayala account, all covering the same period.

The subcontract between Kelley and Ramage and Ayala was terminated by the contractor on January 13, 1959 and completed by the contractor; and the prime contract was completed and accepted by the U. S. Army Engineers on February 21, 1959.

Defendants Kelley and United Pacific Insurance Company have filed seven motions for summary judgment, based upon the pleadings, depositions, affidavits and exhibits on file; and the plaintiff has

orally moved for summary judgment. It appears that there is no genuine issue as to any material fact (Rule 56 F.R.Civ. P., 28 U.S.C.A.). The several motions will be considered in the order made.

## Motion Number Two.*

Defendants move for summary judgment in their favor as relates to the plaintiff's claim of rental on the TD–24 International tractor and the D–8 Caterpillar tractor, totalling $30,877.43, upon the ground that the tractors were being purchased by Ramage and Ayala under conditional sales contracts from the claimant, and therefore no rentals may be charged for such use. There was submitted with the affidavit of the defendant Kelley photostatic copy of a "Conditional Sale Contract" executed by the use plaintiff as vendor and Ramage and Ayala as vendee, covering the D–8 Caterpillar tractor with power control unit and angle dozer, executed October 27, 1958, and a similar "Conditional Sale Contract" executed by the same parties on the same date covering the TD–24 International tractor, with power control unit and dozer. The use plaintiff admits the execution of these instruments but denies that they were in fact intended as contracts of conditional sale, but rather as lease agreements with an option to purchase. The contracts were recorded in the office of the Recorder for the Fairbanks Precinct, Alaska, on November 6, 1958, and had not been released of record as of April 8, 1960. Defendant Kelley states by affidavit that he had informed the plaintiff Miller at the time of delivery of the tractors that if they were not on conditional sales contract they would not be allowed on the job.

The instruments speak for themselves. Both specifically state that the vendor agrees to sell and the vendee agrees to purchase the equipment mentioned, subject to the usual terms and conditions

---

* "Motion Number One" was for an order dismissing the complaint on account of insufficient written notice to the contractor, which was denied by the Court.

relative to a contract of conditional sale under the express provisions of the Uniform Conditional Sales Act of the Territory of Alaska, being Sections 29-2-1 to 29-2-30 A.C.L.A.1949. The purchase price of the Caterpillar tractor was $12,650 plus record fee of $3.50, to be paid in installments commencing November 27, 1958, at the rate of $2,357.50 per month (based on 175 hrs. per month), payments to be made every two weeks. The purchase price of the International tractor was $12,800 plus record fee of $3.50, to be paid in installments at the rate of $2,597.50 per month (based on 175 hrs. per month), payments to be made every two weeks. Both contracts provide "all monies to apply on purchase price." The tractors were finally repossessed by plaintiff in March or April, 1959.

Section 29-2-1 A.C.L.A.1949 provides as follows:

" 'Conditional Sale' means (1) any contract for the sale of goods under which possession is delivered to the buyer and the property in the goods is to vest in the buyer at a subsequent time upon the payment of part [or?] of all of the price, * * *"

The contracts here in question conform specifically to this definition, providing that the title shall vest in the purchaser upon payment of the purchase price. These instruments were executed one day prior to the first date upon which plaintiff claims equipment "rentals," and there can be no question as to the delivery or recording of such instruments, which were not modified, altered or rescinded. Interest was to be paid on the unpaid balance, which is a usual condition of such contracts.

It therefore unequivocally appears that the $30,877.43 claimed by the plaintiff as rental for these two tractors is not in truth and fact rental at all but represents the balance due on such contracts from Ramage and Ayala plus an additional amount claimed for use, and that there was no agreement between the plaintiff and the subcontractor for rental of such equipment in the prosecution of the work provided for in the subcontract.

The supplying of equipment by sale to a contractor or subcontractor is not covered by the payment bond furnished under Section 270a of Title 40 U.S.C.A. Massachusetts Bonding and Ins. Co. v. United States, for use of Clarksdale Machinery Co., 5 Cir., 88 F.2d 388; United States for Use and Benefit of Jeager Machine Co. v. S. Birch & Sons Construction Co., D.C., 43 F.Supp. 726. Therefore no recovery can be had against the surety for this claim. The use plaintiff had under such contract an election of remedies against Ramage and Ayala upon default in payment of the agreed purchase price, that is, either (1) to rescind the conditional sale and bring action for the purchase price, or (2) to declare the contract and the buyer's rights thereunder forfeited and retake possession of the property. There being no such contractual relationship between the plaintiff and the defendant Kelley, no recovery for this item may be had against him. This motion is therefore granted.

Motion Number Three.

Defendants move for summary judgment as relates to plaintiff's claim for rental on other equipment subsequent to January 25, 1959, on items amounting to $2,063.75, upon the ground that defendants Ramage and Ayala by mutual agreement terminated the subcontract on January 13, 1959, and that said equipment was not used after that date by any of the defendants in the prosecution of the work under the prime contract. It is held that in order to recover under the Miller Act it is not required of the materialman that he prove that his materials were actually used in the prosecution of the work of the prime contract

278

but only that in good faith he reasonably believed that the materials were so intended. United States, for Use and Benefit of Westinghouse Electric Supply Co. v. Endebrock-White Company, Inc., 4 Cir., 275 F.2d 57; Fourt v. United States, 10 Cir., 235 F.2d 433. This principle has been applied to a case where a subcontract was terminated and a new subcontractor substituted. Apache Powder Company v. Ashton Company, Inc., 9 Cir., 264 F.2d 417. The same principle would of course apply where the prime contractor took over the subcontract. The reasoning of these cases is that the Miller Act is remedial in nature and is entitled to a liberal construction in order to effect the legislative intent to protect those whose labor and material go into public projects. There is, in fact, no indication that plaintiff was notified of the termination of the subcontract. This motion must therefore be denied.

Motions Numbers Four, Five, Six and Seven.

 By these motions defendants seek summary judgment as relates to claims arising subsequent to February 21, 1959, being the date of completion of the prime contract by the defendant Kelley; that is:

(1) Rentals claimed on equipment other than the tractors, in the sum of $1,243.63

(2) "Merchandise furnished Ayala from Miller & Bentley yard" in the sum of 761.91

(3) "Merchandise and services paid for by (plaintiff) for Ayala account" amounting to 1,018.91 ·

(4) "Services performed by (plaintiff) for Ayala account" in the amount of 756.99

It appears from the affidavit of the plaintiff that the materials and labor furnished and supplied by plaintiff subsequent to February 21, 1959, consisted primarily of furnishing labor and equipment to recondition the tractors and other equipment "leased" by the use plaintiff to said Ayala and Ramage. It is held that the surety may not be held liable for repairs made to equipment after completion of the work. United States to Use of Roig v. Castro, D.C., 71 F.Supp. 36; 91 C.J.S. United States § 109, p. 264. Moreover, Section 270b allows recovery against the surety to a person furnishing labor and material "in the prosecution of the work provided for in such contract." It seems logical that no claim may be made for rentals or materials or services furnished after the work has been completed. It is conceded that rentals of equipment may be the subject of a proper claim, as included in the term "labor and materials," but such must be held to include only rentals of equipment with which to perform the work under the contract. 91 C.J.S., supra, p. 263. As the surety is liable wherever the contractor is liable, and to the same extent (91 C.J.S., supra, § 110, p. 267), it follows that the contractor is likewise not liable for these items. These claims cannot be allowed and the motions for summary judgment in favor of the defendants are granted as to such items.

Motion Number Eight.

 Said defendants move for summary judgment relating to the claim for labor and materials claimed furnished to the subcontractor as set forth in certain invoices furnished in the amount of $5,296.73, for the reason that under

the conditional sales contracts relative to the International and Caterpillar tractors, as to which such claim is made, it is provided that

"If any material parts, accessories, equipment, tires, additions, or substitutions shall be furnished by vendor, or if any repairs be made or work performed by vendor on the property or upon any of the things so furnished, the cost thereof shall be added to the purchase price of the property and shall be payable immediately upon demand, and until

paid, shall be secured by this agreement."

As this claim appears to relate solely to such parts and repairs claimed furnished to the two tractors, and in fact largely furnished after the tractors were repossessed by plaintiff, such claim cannot be sustained and this motion will be granted.

### Conclusion.

Defendants Kelley and United Pacific Insurance Company are entitled to summary judgment against plaintiff that plaintiff take nothing upon the following claims:

| | | |
|---|---|---|
| (1) | Claim for rentals on TD-24 International tractor and D-8 Caterpillar tractor | $30,877.43 |
| (2) | Claims for equipment rental subsequent to February 21, 1959 | 1,243.63 |
| (3) | Claim for "merchandise furnished" subsequent to said date | 761.91 |
| (4) | Claim for "merchandise and services" subsequent to said date | 1,018.91 |
| (5) | Claim for "services performed" subsequent to said date | 756.99 |
| (6) | Claim for labor and materials furnished relative to two tractors | 5,296.73 |
| | Total | $39,955.60 |

Plaintiff is entitled to summary judgment against said defendants for all other items claimed herein, amounting, according to my computation, to $5,726.21.

No further findings of fact or conclusions of law are required or will be necessary.

Judgment may be entered in accordance with this opinion, which may be presented by counsel for defendants.

Under the provisions of Rule 54(d), F.R.Civ.P., costs are allowed "as of course to the prevailing party unless the Court otherwise directs." As both parties have prevailed in part it would seem that no costs should be taxed to either party. Attorney's fees may be allowed in Miller Act cases under state law. By statute in Alaska there may be allowed "to the prevailing party in the judgment certain sums by way of indemnity for his attorney fees in maintaining the action or defense thereto." Sec. 55-11-51 A.C.L.A.1949. This Court has adopted the rule of the former court allowing fees to a party recovering "any money judgment" as part of the costs of the action allowed by law. Rule 25, Amended Uniform Rules of the District Court for the District of Alaska. Such fees if allowed to plaintiff, based upon the amount of recovery, would amount to $615, but such would appear to be justly offset by a like fee allowed to defendants for successfully defending the major portions of plaintiff's claim. Therefore no such fees will be taxed.