UNITED STATES of America for the Use and Benefit of MORAN TOWING CORPORATION

v.

HARTFORD ACCIDENT & INDEMNITY COMPANY.

Civ. A. No. 2868.

United States District Court
D. Rhode Island.

April 19, 1962.

**354**

Benjamin A. Smith, of Tillinghast, Collins & Tanner, Providence, R. I., for plaintiff.

Edward F. Hindle, Ronald R. Lagueux, of Edwards & Angell, Providence, R. I., for defendant.

DAY, District Judge.

Plaintiff brings this action under the provisions of the Miller Act, 40 U.S.C.A. § 270b. In its complaint the plaintiff alleges that M. A. Gammino Construction Company (hereinafter called Gammino) entered into a contract on or about February 5, 1960 with the United States of America, whereby Gammino agreed to furnish all the labor, equipment and material and to perform all the work required for the construction of a certain breakwater at the United States Naval Base at Newport, Rhode Island; that pursuant to and in accordance with the provisions of 40 U.S.C.A. § 270a, Gammino as principal and the defendant as surety executed a payment bond with the United States as obligee, dated February 5, 1960, which was accepted by the United States and which provided in pertinent part as follows:

"THE CONDITION OF THIS OBLIGATION IS SUCH, that whereas the principal entered into a certain contract with the Government, numbered and dated as shown above and hereto attached;

"NOW THEREFORE, if the principal shall promptly make payment to all persons supplying labor and material in the prosecution of the work provided for in said contract, and any and all duly authorized modifications of said contract that may hereafter be made, notice of which modifications to the surety being hereby waived, then this obligation to be void; otherwise to remain in full force and virtue."

Plaintiff further alleges that thereafter, on or about April 20, 1960, plaintiff and Gammino executed a contract whereby the plaintiff agreed to supply certain dump scows for the transportation of breakwater stone at certain rates of compensation per ton from a loading dock at Tiverton, Rhode Island, to the breakwater site; that said contract contained the following provisions:

"3. The stone to be transported hereunder shall consist of quarry run stone 50% of a size 200 lbs. per piece or less, 45% of a size from 200 lbs. to 1000 lbs. per piece, and the

remaining 5% of a size not in excess of 1500 lbs. per piece, provided, however, that if it is demonstrated through experience that pieces weighing more than 1000 lbs. are causing damage to the scows or interfering with the dumping process, then and in either event the limitations as to weight per piece shall be 1000 lbs."

"9. We [Moran] shall be responsible for all ordinary wear and tear to our vessel equipment due to the nature of the material to be transported but you [Gammino] shall be responsible for any damage to our vessel equipment due to your negligence, or for any damage to our vessel equipment whether or not due to your negligence that may be occasioned by loading or unloading of pieces weighing in excess of 1000 lbs. per piece."

Plaintiff further alleges that pursuant to said contract it furnished two certain scows for the performance of the work required under said contract during the period beginning June 21, 1960 and ending December 9, 1960; that during said period on various occasions said Gammino (1) failed and neglected to use due care in loading said breakwater stone and material into said scows in a proper and careful manner, (2) failed and neglected to limit the breakwater stone placed into said scows as to the size, type, weight, proportion and quantity permitted under the terms of said contract, and loaded stones greatly in excess of the size, weight and quantity permitted thereunder, (3) failed and neglected to limit stones weighing between 1000 and 1500 lbs. each to not more than 5%, or stone weighing 200 to 1000 lbs. each to not more than 45% of the stones to be transported, (4) failed and neglected to place loads about said scows, of which 50% were of a size of 200 lbs. each or less, as called for by said contract, (5) failed, neglected and refused to provide a safe berth at the loading dock and dumping site, and (6) failed and neglected to load a proper cushion before placing said breakwater material in said scows, as required by said contract, as a result of which said scows were extensively damaged and plaintiff lost the use thereof.

Additionally, the plaintiff alleges that a tug hired by it from Moran Towing & Transportation, Inc. (for any damage to which it is liable to said Moran Towing & Transportation, Inc.) to tow said scows was damaged, as a result of Gammino's breach of its contract and negligence.

Plaintiff makes no claim that it has not been paid the stipulated rate of hire per ton that was payable to it for the transportation of said stone. But it does seek recovery from the defendant for said alleged damages to its scows and to said tug under the terms of said payment bond.

This matter is now before me on the defendant's motion to dismiss, under Rule 12(b) (6) of the Federal Rules of Civil Procedure, 28 U.S.C.A., for failure to state a claim upon which relief can be granted.

It is the accepted rule that a complaint should not be dismissed for failure to state a claim upon which relief can be granted, unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. And for the purposes of such a motion to dismiss, a complaint should be viewed in the light most favorable to the plaintiff. Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80; Lewis v. Brautigam, 1955, 5 Cir., 227 F.2d 124, 55 A.L.R.2d 505; Harris v. Capehart-Farnsworth Corp., 1953, 8 Cir., 207 F.2d 512; Callaway v. Hamilton Nat. Bank of Washington, 1952, 90 U.S.App.D.C. 228, 195 F.2d 556; Atella v. General Electric Company, 1957, D.C.R.I., 21 F.R.D. 372.

It is generally held that bonds furnished under the Miller Act are to be liberally construed. This rule is well stated in Glassell-Taylor Co. v. Magnolia

Petroleum Co., 1946, 5 Cir., 153 F.2d 527, where at pages 529, 530, the court held:

"The Miller Act * * * is highly remedial in nature. It is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those who furnish labor or materials to public works. * * * "

In accordance with this rule, the courts have construed said Act liberally to allow recovery upon bonds provided thereunder. Illinois Surety Co. v. John Davis Company, 1917, 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206; United States for Use and Benefit of J. P. Byrne & Co., Inc. v. Fire Association of Philadelphia, 1958, 2 Cir., 260 F.2d 541; Massachusetts Bonding & Insurance Co. v. United States for Use of Clarksdale Machinery Co., 1937, 5 Cir., 88 F.2d 388. But despite this rule of liberal construction, it is generally held that a subcontractor has no remedy against the surety on a Miller Act bond for the recovery of damages caused by the negligence of the prime contractor, the principal on such a bond. United States for Use and Benefit of Wyatt & Kipper Engineers, Inc. v. Ramstadt Construction Co., 1961, D.C. Alaska, 194 F.Supp. 379; United States ex rel. Crowder v. Fidelity & Deposit Co. of Maryland, 1956, D.C.La., 144 F.Supp. 322; United States for Use and Benefit of Coken v. DiSandro, 1944, D.C.Conn., 88 F.Supp. 970. Similarly, while a subcontractor may undoubtedly maintain an action against the prime contractor for loss of profits caused by the latter's breach of his contract, the courts hold that he may not maintain such an action against the surety on the prime contractor's bond furnished under the Miller Act. Arthur N. Olive Co., Inc. v. United States of America for Use and Benefit of Marino, 1961, 1 Cir., 297 F.2d 70; L. P. Friestedt Co. v. United States Fireproofing Co., 1942, 10 Cir., 125 F.2d 1010; United States to Use of Watsabaugh & Co. v. Seaboard Surety Co., 1938, D.C.Mont., 26 F.Supp. 681, aff'd 1939, 9 Cir., 106 F.2d 355.

■ However, there is a distinction between a claim for the value of labor and materials furnished by a subcontractor in the prosecution of the work as a result of the breach or default in the performance of his contract by the prime contractor, and a claim for damages for the breach of such a contract. Where the claim asserted is for the value of labor and materials furnished, the subcontractor may maintain an action against the surety on such a bond. Continental Casualty Co. v. Schaefer, 1949, 9 Cir., 173 F.2d 5; L. P. Friestedt Co. v. United States Fireproofing Co., supra; United States for Use and Benefit of Wyatt & Kipper, Engineers, Inc. v. Ramstadt Construction Co., supra.

■ While plaintiff's complaint would seem on its face to be predicated in part upon breach of contract, viewing it, as I must, in the light most favorable to the plaintiff, in substance it asserts a claim for labor and materials supplied by the plaintiff in the prosecution of the work provided for in Gammino's contract with the United States and hence is within the contemplation of said bond. In passing upon a motion such as this, it is not for me to speculate as to the nature or the sufficiency of the proof which the plaintiff may present in support of its claim.

■ Since a subcontractor may not maintain an action against the surety on a Miller Act bond for the recovery of damages caused by the negligence of the prime contractor, the principal on such a bond, but does have a remedy against the surety for the recovery of the value of labor and materials supplied by him in the prosecution of the work covered by such a bond, even though they were required by reason of the breach or default of said prime contractor, the defendant's motion to dismiss is granted with leave to the plaintiff to file an amended complaint within 20 days from the date hereof, if it so desires.

An appropriate order will be entered.