[Civ. No. 10700. Third Dist. Nov. 6, 1964.]

B. C. RICHTER CONTRACTING CO., INC., et al., Plaintiffs and Appellants, v. CONTINENTAL CASUALTY COMPANY et al., Defendants and Appellants.

Robert V. Blade for Plaintiffs and Appellants.

Rich, Fuidge, Dawson & Rich, Rich, Fuidge, Dawson, Marsh, Tweedy & Morris and Thomas Marsh for Defendants and Appellants.

FRIEDMAN, J.—In these two consolidated actions two subcontractors have sued on the prime contractor's surety bond. The plaintiffs sought what they termed "quantum meruit" recovery, measured by the reasonable value of unpaid labor and materials. The trial court limited their recovery

to a lesser amount, the unpaid remainder of the contract price, plus interest and attorney fees. Plaintiffs appeal. Defendant surety companies appeal from that portion of the judgment awarding attorney fees.

The dispute grows out of the construction of Capehart Act[1] housing at Beale Air Force Base. The general scheme of Capehart Act operation is described in *Continental Casualty Co. v. United States* (8th Cir. 1962) 305 F.2d 794. The act permits contracts between the United States and private housing corporations which undertake to finance and construct rental housing for military personnel and their families. One part of the arrangement is a long-term ground lease from the government to the housing corporation, which the latter may mortgage as security for a construction loan from a financial institution. The corporation must put up performance and payment (labor and material) bonds. The government and the corporation then let a construction contract. Rental income of completed units pays off the loan principal and interest. When the mortgage is paid off, the lease to the housing corporation comes to an end and the government then holds clear title to the housing.

In August 1958 the United States Air Force and the Federal Housing Administrator entered into contracts with several housing corporations for the construction of 570 Capehart Act dwelling units at Beale Air Force Base. For convenience we refer to these corporations collectively as "Hal B. Hayes & Associates." In conformity with Capehart Act requirements (42 U.S.C.A. § 1594(a)), Hal B. Hayes & Associates furnished performance bonds and payment bonds with defendants Continental Casualty Company and Fidelity and Casualty Company of New York as sureties. Purpose of the payment bonds was the protection of subcontractors, laborers and materialmen participating in the construction project. Gravamen of the bonds was the following provision: "Now, THEREFORE, the condition of this obligation is such that if the Principal shall promptly make payment to all claimants as hereinafter defined for all labor and material furnished in the prosecution of the work provided for in the Contract, then this obligation shall be null and void; otherwise, it shall remain in full force and effect."

---

[1]Act of August 11, 1955, Public Law 84-345, 69 Stat. 646 ff., as amended by act of August 7, 1956, Public Law 84-1020, 70 Stat. 1110; 12 U.S.C.A. § 1748 et seq. and 42 U.S.C.A. § 1594 et seq.

Hal B. Hayes & Associates contracted the actual construction work to Hayes-Cal Builders, Inc., a related corporation. The latter in turn subcontracted site clearing, grading, street paving, installation of concrete pads and some other work to plaintiff B. C. Richter Contracting Company. Another subcontract was let to a joint venture called R. & E. Materials Company covering delivery of ready-mix concrete. (B. C. Richter, an individual, was one of the joint venturers and maintains the suit on the R. & E. Materials Company contract.) The subcontractors commenced work in September 1958.

As the work progressed, antagonisms developed between the two subcontractors and representatives of the Hal B. Hayes group. At the trial plaintiffs produced evidence designed to show mismanagement and lack of project coordination by the Hayes firm, unjustified change orders, failure to make progress payments and delays and hindrances which handicapped the subcontractors and made their work more expensive. Hayes commenced to insert a "release clause" in the requisitions for progress payments, which would have required the subcontractors to disclaim any unpaid amounts as a condition of receiving progress payments. Plaintiffs would submit the requisitions after crossing out the release clauses. Hayes-Cal Builders then refused to make the progress payments. It withheld progress payments from B. C. Richter Contracting Company commencing in July 1959 and from R. & E. Materials Company commencing September 1959.

Notwithstanding quarrels, claims of breach and the lack of progress payments, both subcontractors continued with the work. By March 10, 1960, both subcontracts had been completed. On that date B. C. Richter Contracting Company sent Hayes a notice of rescission, purportedly rescinding its subcontract for misrepresentation, failure to make progress payments and other breaches. R. & E. Materials Company did not send a rescission notice. By the time the last payment was due following completion of the work, Hayes-Cal Builders had failed or refused to pay B. C. Richter Contracting Company contract amounts aggregating $111,961.08. The unpaid balance in the case of R. & E. Materials Company was $58,908.21.

As will become evident, it is necessary to summarize the issues as drawn in the trial court. In the B. C. Richter Contracting Company action, the pretrial conference order

states that the unpaid contract balance was $111,961.08; that, because of claimed breaches, the plaintiff gave notice of rescission and claims the "reasonable value" of all work performed, amounting to $563,138.66 after deduction of payments actually received. The material portion of the pretrial order in the B. C. Richter action (brought under the R. & E. Materials Company contract) describes an unpaid contract balance of $55,172.79 plus $3,735.42 for additional cement grout delivered at the contractor's request; but, that Richter seeks a further or alternate claim of $101,527.07 based upon "quantum meruit" for goods sold and delivered. The pretrial orders, as well as oral statements of defense counsel in the trial court, indicate that the surety companies were not seriously attempting to defeat recovery of the unpaid contract amounts; rather, their effort was to limit recovery to those amounts.

The pretrial orders omitted a significant aspect of the pleadings. One count of each of the complaints was framed on the theory of an action for the unpaid contract balance plus the extra cost of work allegedly occasioned by the "negligent and unworkmanlike acts and conduct" of Hayes-Cal Builders. The alleged extra cost to B. C. Richter Company was $283,921.46 and to R. & E. Materials Company $53,332.77. These allegations were traversed by the answers. The pretrial orders did not describe this issue, but referred to reasonable value or "quantum meruit" as the only theory upon which plaintiffs claimed amounts in excess of the contract balances.

After a nonjury trial, findings were rendered. The trial court found that B. C. Richter Contracting Company's allegation of rescission was untrue; that the Richter firm had waived any right to rescind by continuing to perform its subcontract after any grounds of rescission had arisen; that both plaintiffs had fully performed their work under the subcontracts and that Hayes-Cal Builders had wilfully withheld progress payments without justification. Notably, the trial court's findings (prepared and submitted by defendants) did not find one way or another on plaintiffs' allegations of breach and hindrance by the prime contractor, other than the withholding of progress payments. Judgment was entered in favor of the B. C. Richter Contracting Company and against the sureties for the actual contract balance of $111,961.08 plus interest and a $3,000 attorney fee. On the R. & E. Materials Company contract, the court gave the plaintiff judg-

ment against the sureties for the unpaid contract balance of $58,908.21 together with interest and $2,000 as an attorney fee.

On appeal there are two primary areas of inquiry: first, whether the surety on a Capehart Act bond may be held liable for money in excess of the contract price actually owed by its principal; if so, whether plaintiffs have established their rights to excess amounts.

Initially, we must fix the source of decisional law governing us in this action on a bond furnished under federal law. ▮ Both state and federal courts have concurrent jurisdiction over suits on bonds furnished for Capehart Act projects. (28 U.S.C.A., § 1352; *Continental Casualty Co.* v. *United States, supra,* 305 F.2d 794; *Allsop Lumber Co.* v. *Continental Casualty Co.,* 73 N.M. 64 [385 P.2d 625]; *Ireland's Lumber Yard* v. *Progressive Contractors, Inc.* (N. D. 1963) 122 N.W.2d 554; cf. *Gypsum Contractors, Inc.* v. *American Surety Co.,* 37 N.J. 315 [181 A.2d 174].) The rights and liabilities of the parties to the contract do not vary with the forum in which adjudication is sought. Since all occurrences in this case took place in this state, California substantive law governs the contractor's liability to the subcontractors. (*Beaty* v. *Brock & Blevins Co.* (6th Cir. 1963) 319 F.2d 43; *Continental Casualty Co.* v. *Schaefer* (9th Cir. 1949) 173 F.2d 5, cert. den. 337 U.S. 940 [69 S.Ct. 1517, 93 L.Ed. 1745].) Extent of the surety's liability on the contractor's bond turns on application of a federal statute, and on that point federal court decisions supply the controlling rules. (*Continental Casualty Co.* v. *Schaefer, supra,* 173 F.2d 5.)

When Congress adopted it in 1955, the Capehart Act lacked any special provision for contractors' bonds. In that state of the law Capehart Act contractors were required to put up performance bonds and payment bonds (the latter, to secure subcontractors' claims for labor and material) pursuant to the requirements of the Miller Act, a law applicable to federal public works generally (Act of August 24, 1935; Public Law 321; 40 U.S.C.A. § 270a; see *Lasley* v. *United States* (5th Cir. 1960) 285 F.2d 98; *United States* ex rel. *Fine* v. *Travelers Indemnity Co.* (D.C.W.D.Mo. 1963) 215 F.Supp. 455. In 1956 Congress amended the Capehart Act to require that Capehart contractors furnish ''a performance bond and a payment bond . . . and the furnishing of

such bonds shall be deemed a sufficient compliance with the provisions of section 270a of title 40, and no additional bonds shall be required under such section."[2]

Procedurally, in such matters as notice and venue, actions on Capehart bonds are governed by a body of law developed independently of the Miller Act. (*Continental Casualty Co.* v. *United States, supra,* 305 F.2d at p. 800; *United States ex rel. Miles Lumber Co.* v. *Harrison & Grimshaw Constr. Co.* (10th Cir. 1962) 305 F.2d 363, 367 (cert. den. 371 U.S. 920 [83 S.Ct. 287, 9 L.Ed.2d 363]); *Central Steel Erection Co.* v. *Will* (9th Cir. 1962) 304 F.2d 548; *National State Bank of Newark* v. *Terminal Constr. Corp.* (D.C.N.J. 1963) 217 F.Supp. 341, 349, affd. 328 F.2d 315).) From the standpoint of the surety's substantive responsibility for liabilities of its principal, federal decisions under the Miller Act are applicable in actions under Capehart Act bonds (*D. & L. Constr. Co.* v. *Triangle Elec. Supply Co.* (8th Cir. 1964) 332 F.2d 1009; *National State Bank of Newark* v. *Terminal Constr. Corp., supra,* 217 F.Supp. at pp. 350-351; *United States ex rel. Fine* v. *Travelers Indemnity Co., supra,* 215 F.Supp. at pp. 470-474.)

Some of the Miller Act decisions posit a "general" rule which holds the bonding company liable to the subcontractor whenever the prime contractor is liable and to the same extent. (*United States ex rel. Weston & Brooker Co.* v. *Continental Casualty Co.* (4th Cir., 1962) 303 F.2d 91; *United States ex rel. Miller & Bentley Equipment Co.* v. *Kelly* (D.C. Alaska, Fairbanks 1961) 192 F.Supp. 274; see 91 C.J.S., United States, § 110, p. 267.) The rule is highly qualified and, standing alone, an unreliable guide. Thus, quite aside from the prime contractor's liability, it is said that the surety is not liable for damages resulting from the former's breach of contract. (*L. P. Friestedt Co.* v. *U.S. Fireproofing Co.* (10th Cir. 1942) 125 F.2d 1010; 91 C.J.S., United States, § 110, p. 268.) Here, too, the result is conditioned by the kind of "damage." If the damage consists of a monetary loss which does not materialize in some contribution to the construction project, one result is reached;

---

[2] 42 U.S.C.A., § 1594. Section 270a of title 40, United States Code Annotated, mentioned in the Capehart Act amendment, is the contractor's bond provision of the Miller Act. A discerning analysis of Capehart Act history and the relationship between the bond provisions of the two acts is contained in the opinion of District Judge Oliver in *United States ex rel. Fine* v. *Travelers Indemnity Co., supra,* 215 F.Supp. 455.

if, on the other hand, there is an augmentation of labor and material costs actually expended on the job, the result is quite different. Business losses attributable to the breach may not be recovered from the surety, even though the principal may be liable. (*Arthur N. Olive Co.* v. *United States* (1st Cir. 1961) 297 F.2d 70; *United States* ex rel. *Moran Towing Co.* v. *Hartford A. & I. Co.* (D.C.R.I. 1962) 204 F.Supp. 353.) The Miller Act decisions, however, firmly establish the surety's liability for the extra cost of labor and material supplied to the project resulting from the prime contractor's breach, hindrance or default. (*Continental Casualty Co.* v. *Schaefer, supra,* 173 F.2d at pp. 8-9; *United States* ex rel. *Moran Towing Co.* v. *Hartford A. & I. Co., supra,* 204 F.Supp. at p. 356.) ▪ To the extent that plaintiffs are able to establish the contractor's liability for augmented costs of labor and materials attributed to the latter's default and hindrance, the defendant sureties are answerable.

We reach the second phase of the inquiry, the question of substantive contractual liability for amounts in excess of the unpaid contract balances. Plaintiffs' appeal rests on the thesis that breaches and defaults by Hayes-Cal entitle them to forego the contract price as the strict measure of liability, permitting recovery by the more generous scale of quantum meruit or reasonable value. They equate reasonable value with their actual costs plus an "overhead and profit" factor of 15 per cent.

Plaintiffs' thesis rests upon misconceptions of contract law and misuse of the phrase "quantum meruit." ▪ The general rule in California is " '. . . one who has been injured by a breach of contract has an election to pursue any of three remedies, to wit: "He may treat the contract as rescinded and may recover upon a quantum meruit so far as he has performed; or he may keep the contract alive, for the benefit of both parties, being at all times ready and able to perform; or, third, he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing." ' " (*Oliver* v. *Campbell,* 43 Cal.2d 298, 302 [273 P.2d 15]; *Alder* v. *Drudis,* 30 Cal.2d 372, 381 [182 P.2d 195]; 12 Cal.Jur.2d, Contracts, § 253; Rest., Contracts, § 347.) ▪ When, after partial performance, the innocent party elects to disaffirm or rescind, there is no longer any contract which conclusively fixes a limit

upon his recovery; hence, it is said, he may sue upon a quantum meruit as if the special contract had never been made and may recover the reasonable value of the services performed, even though recovery exceeds the contract price. (*Oliver* v. *Campbell, supra,* 43 Cal.2d at p. 304; *Lessing* v. *Gibbons,* 6 Cal.App.2d 598, 607 [45 P.2d 258]; 5 Williston on Contracts (rev. ed.) § 1485, p. 4146; Rest., Contracts, § 347; see Comments, 23 Cal.L.Rev. 313, 7 So.Cal.L.Rev. 338.)

If the innocent party chooses to rescind, he must do so promptly upon discovery of the breach. (Civ. Code, § 1691; *Beckett* v. *Kaynar Mfg. Co., Inc.,* 49 Cal.2d 695, 700 [321 P.2d 749]; 12 Cal.Jur.2d, Contracts, § 194.) He may not wait to see whether the contract turns out to be profitable or unprofitable, good or bad. (*Sogg* v. *Harvey,* 134 Cal. App.2d 116, 121 [285 P.2d. 104].)

Where his performance is not prevented, the injured party may elect instead to affirm the contract and complete performance. If such is his election, his exclusive remedy is an action for damages. (*House* v. *Piercy,* 181 Cal. 247, 251 [183 P. 807]; *Ely* v. *Bottini,* 179 Cal.App.2d 287, 296 [3 Cal.Rptr. 756].) His measure of damage is the unpaid contract price plus any additional expense attributable to the breach. (Civ. Code, § 3300; *Buxbom* v. *Smith,* 23 Cal.2d 535, 541 [145 P.2d 305]; *Higgins* v. *Desert Braemer, Inc.,* 219 Cal.App.2d 744, 751 [33 Cal.Rptr. 527]; *Standard Iron Works* v. *Globe Jewelry & Loan, Inc.,* 164 Cal.App.2d 108, 116 [330 P.2d 271]; Rest., Contracts, §§ 329, 346(2)(a); 5 Williston on Contracts (rev. ed.) § 1338, pp. 3762-3764.)

Affirmation of the contract, on the one hand, and rescission and restitution on the other, are alternative remedies. Election to pursue one is a bar to invoking the other. (*Alder* v. *Drudis, supra,* 30 Cal.2d at p. 383; *Lenard* v. *Edmonds,* 151 Cal.App.2d 764, 768 [312 P.2d 308]; Rest., Contracts, § 384; 5 Williston on Contracts (rev. ed.) § 1464, pp. 4096-4097.)

In plaintiffs' closing brief, not before, our attention was drawn to a provision contained in the subcontract agreement of plaintiff B. C. Richter Contracting Company, but not in the subcontract of R. & E. Materials Company: ''Subcontractor, in the event of any dispute or controversy with Contractor or any other subcontractor over any matter whatsoever, shall not cause any delay or cessation in or of Subcontractor's work or the work of any other subcontractor or

of the Contractor but shall proceed under this Subcontract Agreement with the performance of the work required thereby.''

The quoted clause bound Richter to finish its work regardless of any dispute with Hayes-Cal Builders. In effect, the clause was an advance waiver of any right to rescind after partial performance. The net result of the clause was to make a breach of contract action the subcontractor's exclusive remedy. (*Nelson* v. *Spence,* 182 Cal.App.2d 493, 497 [6 Cal.Rptr. 312]; 5A Corbin on Contracts, § 1227; 17A C.J.S., Contracts, § 422(1), p. 521, fn. 62.) Having committed itself to complete performance, Richter Contracting was confined to the remedy and to the scale of damages available to one who has completed his contract notwithstanding a breach by the other party—suit on the contract and recovery by the scale of damages which the law applies in such suits. (*Canepa* v. *Sun Pacific, Inc.,* 126 Cal.App.2d 706, 712-713 [272 P.2d 860].)

On the assumption that Hayes-Cal was guilty of hindrances and defaults amounting to a breach of contract conditions, the other plaintiff, R. & E. Materials Company, had an election to rescind promptly or to stand on its contract and continue performance. Choice of the first alternative would have permitted R. & E. Materials to sue in quantum meruit for the reasonable value of partial performance, less any sums paid. The joint venture did not choose that alternative. The trial court correctly concluded that it lost all right to rescind by failing to do so promptly after the cessation of progress payments. It is equally accurate to say that it elected not to repudiate its subcontract, but to affirm it and continue performance. Having chosen the second alternative, it was then barred from repudiation and pursuit of reasonable value.

Thus, when both plaintiffs argue on appeal for ''quantum meruit'' unlimited by the contract price, they speak in terms not available to them. Their remedy was that imposed upon them, in the one case, by contract and in the other by their election to perform: to sue for the unpaid balance of the contract price plus extra costs caused by hindrances and delay.

Plaintiffs cite a number of Miller Act decisions in which the subcontractor was allowed quantum meruit against the prime contractor and bonding company. Examples are *Wunderlich Contracting Co.* v. *United States* (10th Cir. 1957) 240

F.2d 201 and *United States* ex rel. *Susi Contracting Co.* v. *Zara Contracting Co.* (2d Cir. 1944) 146 F.2d 606. In these cases, there was an abandonment or repudiation of the contract after partial performance. In *Continental Casualty Co.* v. *Schaefer, supra,* 173 F.2d 5, the subcontractor was allowed to recover the reasonable value of extra work induced by the contractor and not properly part of his contractual obligation. In none of these cases did the injured party complete his contract and seek then to ignore it as his measure of recovery. More to the point is *United States* ex rel. *Harkol, Inc.* v. *Americo Constr. Co., Inc.* (D.C. Mass. 1958) 168 F.Supp. 760, in which the subcontractor elected to finish the job after progress payments ceased and then sue the bonding company in quantum meruit. The court held the plaintiff to the contract price. (See also *Jefferson Constr. Co.* v. *United States* (1st Cir. 1960) 283 F.2d 265; *Lichter* v. *Goss* (7th Cir. 1956) 232 F.2d 715.)

As we have noted, one count of each of the complaints was correctly framed on the theory of recovery of the contract price plus extra costs occasioned by the wrongful acts of Hayes-Cal, which is the only available theory for recovery of money in excess of the withheld contract payments. The pretrial orders mistakenly shifted the theory to the false one of quantum meruit or reasonable value. The pretrial orders, of course, fixed the actual issues and superseded inconsistent pleadings. (Cal. Rules of Court, rule 216; see Witkin, Cal. Procedure (1954) [1963 Supp., pp. 535-536].) In one sense, the judgment under attack correctly reflects the view that plaintiffs were not entitled to recover on the reasonable value issue framed by the pretrial orders. Given that effect, the pretrial orders would confine plaintiffs to a narrow road leading fruitlessly to an unavailable objective. We reject such a rigorous application of the pretrial orders.

Long before the advent of pretrial, an established doctrine permitted a plaintiff to shift his pursuit from one breach of contract remedy to another where his initial choice was a mistaken one, not really available to him, and his adversary suffered no change of position. (*McGibbon* v. *Schmidt,* 172 Cal. 70, 75 [155 P. 406]; *Hines* v. *Ward,* 121 Cal. 115, 121 [53 P. 427]; 17 Cal.Jur.2d, Election of Remedies, § 9; 5A Corbin on Contracts, § 1225; Rest., Contracts, § 383.) Since adoption of the pretrial system, it has been held that a complaint pleading a common count is consistent with a pretrial

order which recites an express contract and is not superseded by the latter. (*Carnation Co.* v. *Marcevich,* 186 Cal.App.2d 618, 620 [9 Cal.Rptr. 80].) In the present case the shift from a correct to an incorrect theory of recovery was more verbal than real. The general set of facts warranting recovery would be the same no matter what the legal theory. (See *Austin* v. *Massachusetts Bonding & Ins. Co.,* 56 Cal.2d 596, 600-601 [15 Cal.Rptr. 817, 364 P.2d 681]; *Bonded Products Co.* v. *R. C. Gallyon Constr. Co.,* 228 Cal.App.2d 186 [39 Cal.Rptr. 347].) Although expressed as a vital distinction of contract law, the shift had the net result of substituting one scale of damages for another. There was no variance in the sense that defendants became vulnerable to unexpected evidence or unanticipated contentions. Evidence of breach by Hayes-Cal was admissible under either theory. Evidence offered to prove the reasonable value of plaintiffs' services would largely duplicate that admissible on a damage theory. In fact, contract price and actual cost of the work and materials were the principal items of evidence adduced at the trial in support of the erroneous quantum meruit concept. The same two elements would constitute the evidentiary basis for an award computed on a damage theory. We do not stop at this point to pin fault for the misconceived pretrial orders. We hold that they were not so inconsistent with the pleadings as to foreclose plaintiffs from seeking a judgment computed on a theory of contract affirmance, a judgment measured by the unpaid contract price plus extra cost of performance.

We arrive at another point necessary to disposition of this appeal, one which the briefs neglect. Plaintiffs' emphasis on breach of contract is met by a dearth of trial court findings on that subject. Although the complaints had stigmatized Hayes-Cal with an extensive list of defaults, hindrances, errors and delays, the findings (prepared by counsel for defendants) omit all reference to any breach or hindrance which might have augmented plaintiffs' cost of completing the contracts. Only one breach is mentioned in the findings, the conceded failure to make full payment of the contract price.

Certainly, findings of breach and hindrance by Hayes-Cal were not necessary in order to sustain a judgment for the contract balance. But findings on that score were vital to disposition of plaintiffs' claim for money in excess of that amount. The former amount was conceded, the latter the

only area of real dispute. Alleged breach of contractual conditions was at the core of this contest. If plaintiffs were unable to prove breach of contractual conditions, their recovery was limited to the contract balance, regardless of their real or mistaken theory of action. Findings on the subject of breach and hindrance were indispensable to the resolution of the real contest in the lawsuit. ▮ Where there is evidence upon which to base a finding on a material issue, the trial court's failure to find on that issue is reversible error. (*De Burgh* v. *De Burgh,* 39 Cal.2d 858, 873 [250 P.2d 598]; *Lewis Food Co.* v. *Fireman's Fund Ins. Co.,* 207 Cal.App.2d 515, 525 [24 Cal.Rptr. 557].) This court may make findings in limited instances (Code Civ. Proc., § 956a) but the determination of this pivotal issue is more properly a trial court function. (*Larson* v. *Thoresen,* 36 Cal.2d 666, 670 [226 P.2d 571]; *Merigan* v. *Bauer,* 206 Cal.App.2d 616, 622 [23 Cal. Rptr. 872].)

Quite apparently, the substitution of shadow for substance is traceable to the misconceived pretrial orders. Was not "reasonable value" the theoretical premise of plaintiffs' claim? Did not this claim in turn depend upon timely rescission? Attempted rescission had been anything but timely, hence the quantum meruit claim had to be denied. As we have seen, however, the essential issue presented by the pleadings, a claim for excess construction costs, managed to survive the strangulating effect of the pretrial orders. Plaintiffs' ineffectual rescission attempt was irrelevant to resolution of this essential issue.

While the inadequate findings submitted by defendants should have stimulated plaintiffs' counsel to request findings on the omitted issue (see Code Civ. Proc., § 634), failure to do so is not fatal. On occasion appellate courts will presume that the trial court found all facts necessary to support its judgment. (4 Cal.Jur.2d, Appeal and Error, § 576.) Here the trial judge rendered an opinion stating that, in view of plaintiffs' failure to rescind, there was no necessity to pass upon other contentions. ▮ We will not indulge in presumed findings or draw an implication of findings on issues which the trial court expressly declined to decide. (See *Finley* v. *Winkler,* 99 Cal.App.2d Supp. 887, 889 [222 P.2d 345].)

▮ We do not know what findings the trial court would have made on the crucial issue of breach, hindrance and

delay. Hence the judgment must be reversed and the cause remanded. If the trial court concludes that the present record supplies adequate evidence to support findings on that issue, it may make new findings and enter judgment without additional evidence. If the trial court desires further evidence on that issue or on the subject of augmented cost figures, it may direct reopening of the record for additional evidence.

Plaintiffs have indicated some expectation of an award which would include a profit on augmented construction costs. The question may be raised after remand; thus it is appropriate to comment on it. ██ A plaintiff in a breach of contract action is entitled to the benefits he would have obtained if both parties had fully performed, but no more. (Civ. Code, §§ 3300, 3358; 14 Cal.Jur.2d, Damages, § 131; 5 Corbin on Contracts, § 1033, p. 203.) He should not receive a greater profit than he would have made by full performance. If the evidence establishes plaintiffs' recovery of construction costs in excess of the unpaid contract amounts, those costs should not include a profit factor. (*Laburnum Constr. Corp.* v. *United States* (Ct. of Claims, 1963) 325 F.2d 451, 459.) There is, however, one claim for extra grading by Richter Contracting at an agreed price. If under appropriate findings recovery is permitted for this item, the recovery should be at the agreed rate even though a profit is included.

██ We reach the question of attorney fees. No provision of the subcontracts or the construction bonds authorized award of legal fees in the event of suit. In the absence of contract, plaintiffs rely upon Capehart Act and Miller Act decisions holding bonding companies liable for attorney fees on the strength of state statutes. At this point plaintiffs resort to section 4207 of the California Government Code, which directs award of a reasonable attorney's fee to the prevailing party in suits on bonds of public works contractors.

Some of the Capehart and Miller Act decisions are not in point here because the contractor and the bonding company were fastened with attorney fees under express contract provisions. (*United States* ex rel. *Sherman* v. *Carter,* 353 U.S. 210, 220 [77 S.Ct. 793, 1 L.Ed.2d 776, 784]; *D. & L. Constr. Co.* v. *Triangle Elec. Supply Co., supra,* 332 F.2d 1009.) Where state law makes the contractor liable for attorney fees in suits for labor and materials, federal decisions

fasten his bonding company with this item, on the theory that the surety's liability coincides with that of the principal. (*Boyd Callan, Inc.* v. *United States* (5th Cir. 1964) 328 F.2d 505; *National Surety Corp.* v. *United States* (5th Cir. 1964) 327 F.2d 254; *Sam Macri & Sons* v. *United States* (9th Cir. 1963) 313 F.2d 119; *Continental Casualty Co.* v. *United States* (5th Cir. 1962) 308 F.2d 846; *United States* ex rel. *Puget Sound Dredging Co.* v. *Elwin* (D.C. Alaska 1961) 219 F.Supp. 418.) Accepting, as we do, the doctrine that extent of the surety's liability is governed by federal decisions, and further, that these decisions impose an attorney fee on the surety in cases where the state law would make the principal liable, we arrive at the pivotal inquiry: Does California law make Hayes-Cal liable for attorney fees?

In actions at law in California, attorney fees are not recoverable in the absence of a contractual agreement or special statute. (*Reid* v. *Valley Restaurants, Inc.*, 48 Cal.2d 606, 610 [311 P.2d 473].) Since there was no contract for a fee, the award made by the trial court must find some statutory foundation. Government Code section 4207, authorizing fee awards in suits on contractors' bonds, applies only to public works of the State of California and of California political subdivisions and agencies. (Gov. Code, § 4200.) Section 4207 has no application to private construction projects or to projects of the United States. It formulates a rule for a restricted class of projects, those undertaken by the state and its instrumentalities. The appeal briefs debate whether a Capehart Act project is "public" or "private." The debate is pointless, since—whatever it is—the project is not one to which the California statute applies. That statute is a false quantity, an irrelevant happenstance, in this lawsuit. California law does not authorize award of an attorney fee against Hayes-Cal, the principal obligor; thus there is no liability which may be passed on to the surety; the trial court erred in awarding attorney fees.

At least one Miller Act decision has pursued state law to the point of awarding an attorney fee on the strength of a state statute like that of California, authorizing fee awards in suretyship actions on state public works contracts. (*United States* ex rel. *Western Steel Co.* v. *Reliance Ins. Co. of Philadelphia, Pa.* (D.C. Mont. 1964) 227 F.Supp. 939.) Such an award, we think, misses the point that the surety's liability is an extension of its principal's. The decision runs counter

to the current of federal decisional law, which permits the award only where state law would have made the contractor himself liable for a fee.

 Lastly, we consider the matter of appeal costs. This lawsuit has been obscured and its disposition delayed by the false quantum meruit issue. As we view the record, this false issue was injected by plaintiffs, who have continued to maintain it unto the closing pages of their closing brief. Having pushed the litigation off the track in the trial court, plaintiffs have accomplished nothing by this appeal except to get it back on track. The interests of justice fasten appeal costs on plaintiff-appellants.

The judgment is reversed and the cause remanded to the trial court for proceedings consistent with this opinion. Costs on appeal are awarded to defendants-respondents.

Pierce, P. J., and Van Dyke, J.,* concurred.

A petition for a rehearing was denied December 2, 1964.

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.