Filed 3/6/26  Hillgren v. Tarnutzer CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| MARK J. HILLGREN, | |
| Plaintiff and Respondent, | G064367 |
| v. | (Super. Ct. No. 30-2021-01203469) |
| RICK TARNUTZER, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Thomas S. McConville, Judge. Affirmed.

Law Offices of Sheldon J. Fleming and Sheldon J. Fleming for Plaintiff and Respondent.

Ferguson Braswell Fraser Kubasta and George L. Hampton for Defendant and Appellant.

*        *        *

This appeal arises from a judgment after a jury trial on a breach

of contract claim. Mark Hillgren brought suit on an oral contract to repay a loan. Defendant Rick Tarnutzer acknowledged that he borrowed money from Hillgren, but claimed the oral contract between the two former friends did not include a promise to pay interest. The jury disagreed and awarded Hillgren $130,000 in principal and $255,811.11 in interest. Standing in equity, the court awarded the same amount on an unjust enrichment claim. Tarnutzer appealed.

His primary contention on appeal is that he breached the contract in 2006, yet Hillgren waited until 2021 to file suit, long after the statute of limitations had passed. This argument comes down to a disagreement about the terms of the oral contract. Hillgren testified that the $130,000 (plus interest) was not due until Tarnutzer paid off an earlier loan of $300,000, which he did in 2020. Tarnutzer, on the other hand, contends that the cause of action for the $130,000 accrued when the $300,000 came due in 2006 without being paid. Ultimately, because there was a factual dispute about the terms of the contract, we credit the evidence in favor of the judgment that the $130,000 was not due until the earlier loan was actually paid. Accordingly, the $130,000 loan came due in 2020, and the 2021 lawsuit was timely.

Tarnutzer further contends that the court's alternate verdict on a theory of unjust enrichment must be reversed because no such cause of action exists. However, because we affirm the breach of contract verdict, we need not reach this issue.

Finally, Tarnutzer contends it was error to admit evidence of his wealth. We conclude that any error was harmless. Accordingly, we affirm.

FACTS

In 2003 Tarnutzer borrowed $300,000.00 from his long-time friend Hillgren in order to start a new business (we refer to this as the first loan). The first loan was documented by a written promissory note, and it bore interest at 10 percent per year. It was secured by a lien on Tarnutzer's yacht and a second deed of trust on Tarnutzer's home in Newport Beach. The note was to be paid in full on January 23, 2006.

Not long afterward, Tarnutzer was experiencing financial difficulties and the bank that held the first deed of trust on his home was threatening to foreclose. In order to prevent his friend from losing his house, Hillgren loaned Tarnutzer $130,000 to cure the default (we refer to this as the second loan). Because this money was needed urgently and the first loan had taken three months to document, the second loan was given pursuant to oral promises. Hillgren testified that he told Tarnutzer that the second loan was conditioned on paying 10 percent interest per annum, and that it was to be paid back after the first loan had been paid off. Tarnutzer testified that he never agreed to the 10 percent interest.

Notwithstanding that the second loan was not documented, Hillgren did not worry about Tarnutzer paying him back because Tarnutzer owned extensive assets, including millions of dollars worth of collector cars.

After making both loans, Hillgren would send Tarnutzer regular statements showing what was owed, which included 10 percent interest on the second loan. However, Tarnutzer only ever made interest payments on the first loan. Nonetheless, Hillgren testified that Tarnutzer never objected to the interest charge on the second loan.

The 2006 due date for the first loan came and went without Tarnutzer paying off the principal. However, he continued making regular

interest payments. Tarnutzer also continued to assure Hillgren that he was attempting to come up with the financing to pay off the first loan.

In April 2019, a lawyer named Michael Lawler wrote a letter to Tarnutzer, purportedly on behalf of Hillgren and another individual who had loaned Tarnutzer money, stating that the $130,000 loan was due. However, at trial, Hillgren testified that this was incorrect and that Lawler was not actually Hillgren's attorney (he represented another lender who had simultaneously lent Tarnutzer money) and was not authorized to send the letter on Hillgren's behalf.

The first loan was eventually paid in full, including interest, in February of 2020. Shortly afterward, Hillgren sent Tarnutzer a letter stating that the $130,000 was "now due." Tarnutzer testified that he offered to pay the $130,000 of principal but refused to pay the interest.

## PROCEDURAL HISTORY

Hillgren filed suit on June 1, 2021.[1] The complaint asserted causes of action for breach of oral contract, common counts, and unjust enrichment. The legal claims were tried to a jury, which found in favor of Hillgren. The jury awarded Hillgren $130,000 and principal and $255,811.11 in interest, for a total of $385,811.11. The court, sitting as trier of fact on the unjust enrichment claim, made the same findings in favor of Hillgren. Following the entry of judgment, Tarnutzer timely appealed.

## DISCUSSION

### I.

### THE STATUTE OF LIMITATIONS DID NOT BAR HILLGREN'S CONTRACT CLAIM

Tarnutzer's first and primary contention is that Hillgren's claim

---

[1] Hillgren filed suit as trustee of the Seaward Partners Profit Sharing Plan & Trust, which had been the source of the loaned funds.

4

for breach of contract was barred by the statute of limitations. In particular, he claims that when he failed to repay the $300,000 first loan in 2006 pursuant to its written terms, the second loan became immediately due. And because he did not pay the $130,000 second loan at that time, Hillgren's claim accrued in 2006. The statute of limitations for breach of an oral contract is two years. (Code Civ. Proc., § 339.) Hillgren did not file suit until 2021. Ergo, the statute of limitations ran.

The fundamental problem with Tarnutzer's argument is that the evidence was clear that the second loan was not due until the first loan was *paid off*, which did not occur until 2020. "A cause of action for breach of contract accrues at the time of breach, which then starts the limitations period running." (*Cochran v. Cochran* (1997) 56 Cal.App.4th 1115, 1120.) No breach occurred until the first loan had been paid off and Tarnutzer refused to repay the second loan.

The unstated premise in Tarnutzer's argument is that his breach in 2006 was tantamount to a total repudiation of the first loan contract, and, having repudiated the first loan, the second loan came due. But that premise does not comport with the facts or the law.

Under section 317 of the Restatement (First) of Contracts, an injured party may treat a material breach as partial and affirm the contract so long as the other party has not repudiated the contract and assents to its continuation. California follows this principle. (*Coughlin v. Blair* (1953) 41 Cal.2d 587, 598–599 ["even if a breach is total, the injured party may treat it as partial, unless the wrongdoer has repudiated the contract."]; *B. C. Richter Contracting Co. v. Continental Cas. Co.* (1964) 230 Cal.App.2d 491, 500 ["Where his performance is not prevented, the injured party may elect instead to affirm the contract and complete performance."].)

5

Factually, that is exactly what happened in this case. The 2006 due date for the loan came and went, yet both parties continued to affirm the contract. Tarnutzer continued making interest payments on the contract, and Hillgren made no attempt to collect on the principal. In context, this makes sense. The two were old friends, and Hillgren was taking a sympathetic and flexible approach to the loan. The law permits this. As a result, there was no total breach or repudiation of the first loan, and the second loan did not come due until the first loan was actually paid off in 2020. Therefore, the cause of action for breach of the second loan accrued in 2020 (at the earliest), and Hillgren's 2021 complaint was timely.

Because we affirm the judgment on the basis of the breach of contract verdict, we need not address Tarnutzer's argument that the alternative basis for the same judgment, the court's unjust enrichment finding, was contrary to California law.

II.

THERE WAS NO PREJUDICIAL ERROR IN ADMITTING

EVIDENCE OF TARNUTZER'S WEALTH

Tarnutzer's final contention is that the court prejudicially erred by admitting evidence of his wealth. In particular, Hillgren was permitted to testify that he had no concerns about Tarnutzer's ability to repay the loans because Tarnutzer owned a collection of rare and expensive vehicles. Assuming (without deciding) it was error to admit this testimony, we conclude it was not prejudicial.

"Prejudice is not presumed from the erroneous admission of evidence. [Citation.] It is the appellant's burden to establish that the error was prejudicial." (*Bjoin v. J-M Manufacturing Co., Inc.* (2025) 113 Cal.App.5th 884, 900.) To establish prejudice, Tarnutzer must show that it is

6

reasonably probable that he would have received a more favorable result at trial had the error not occurred. (*Mountain View Police Dept. v. Krepchin* (2024) 106 Cal.App.5th 480, 506.)

Tarnutzer's prejudice argument is, essentially, that juries are biased against wealthy individuals. But it was obvious to the jury that both parties were wealthy individuals. They lived in Newport Beach, and the first loan was secured, in part, by a lien on Tarnutzer's *yacht*. It was equally obvious that Hillgren was a wealthy individual. There was testimony that Hillgren also owned a boat, and the very fact that Hillgren could loan $430,000 to a friend on short notice left little doubt about his wealth. David v. Goliath this was not. Because the jury could easily surmise Tarnutzer was wealthy even absent evidence of his car collection, and because Hillgren was also a wealthy individual, there is no reason to believe that evidence of Tarnutzer's car collection biased the jury against him.

DISPOSITION

The judgment is affirmed. Hillgren shall recover his costs incurred on appeal.

SANCHEZ, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


MOORE, J.

7