**McGREGOR ARCHITECTURAL IRON CO., Inc., Plaintiff,**

v.

**MERRITT–CHAPMAN & SCOTT CORPORATION et al., Defendants.**

Civ. A. No. 5487.

United States District Court
M. D. Pennsylvania.
April 26, 1957.

Welles & Mackie, Scranton, Pa., for plaintiff.

John W. Bour, O'Malley, Morgan, Bour & Gallagher, Scranton, Pa., for defendants.

James J. Zaydon, Scranton, Pa., for John T. Evanick trading as John T. Evanick & Co., and Frederick Raff Co., Inc., intervenors.

FOLLMER, District Judge.

This matter is before the Court on motion to dismiss the complaint on the ground that it fails to state a claim upon which relief can be granted.

It appears from the face of the complaint that Merritt-Chapman & Scott Corporation (hereafter referred to as Merritt-Chapman) entered into a contract with the United States for the construction of buildings, utility systems and site improvements for Signal Corps Depot, Tobyhanna, Monroe County, Pennsylvania. Thereafter Merritt-Chapman as principal and the seven insurance defendants entered into a bond in the amount of $2,500,000 conditioned to "promptly make payment to all persons supplying labor and material in the prosecution of the work provided for in said contract", pursuant to 49 Stat. 793, 40 U.S.C.A. § 270a et seq., known as the Miller Act.

Merritt-Chapman subcontracted a portion of the work under the main contract to Frederick Raff Company (hereafter referred to as Raff), first subcontractor. Raff subcontracted a portion of the work covered by its contract to J. T. Evanick

& Co. (hereafter referred to as Evanick), second subcontractor. Evanick subcontracted a portion of the work covered by its contract to plaintiff, McGregor Architectural Iron Co., Inc. (hereafter referred to as McGregor), third subcontractor.

Plaintiff's claim is predicated upon two contracts with Evanick, one for the erection of a bunker and the other for the erection of a stiff leg post and three bridle posts (known as the Sauerman contract), both of which were an actual part of the Tobyhanna job and were performed on the site by plaintiff. The complaint was subsequently amended to read, United States of America for the use of McGregor Architectural Iron Co., Inc. v. "The several defendants."

On June 22, 1955, within three months after the last work was performed on the above-mentioned bunker and Sauerman contracts, registered mail notice was sent, postage prepaid, by plaintiff, McGregor, to defendant, Merritt-Chapman, stating the amount claimed and the name of the party to whom the material was furnished and the labor performed, in compliance with the Act of Congress above referred to. It will be noted that the Evanick-McGregor subcontract contemplated the furnishing of material and the performance of labor.

The statute involved reads as follows: 40 U.S.C.A. § 270b.

"(a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: *Provided, however, That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond* upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelop addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or in any manner in which the United States marshal of the district in which the public improvement is situated is authorized by law to serve summons." (Emphasis supplied.)

Defendants base their motion solely on their interpretation of Clifford F. MacEvoy Co. v. United States for Use and Benefit of Calvin Tompkins Co., 322 U.S. 102, 64 S.Ct. 890, 892, 88 L.Ed. 1163, and therefore contend that plaintiff has no standing to proceed under the Miller Act because it is too far down in the chain of subcontractors.

The MacEvoy case is clearly distinguishable. In that case MacEvoy, the prime contractor, purchased from Miller certain building materials for use in the prosecution of the work provided for in MacEvoy's contract with the Government. Miller in turn purchased these materials from Tomkins. Miller failed to pay Tomkins. There was no allegation that Miller agreed to perform or did perform any part of the work on the construction project. The Court spelled out the issue as to whether under the

Miller Act a person supplying materials to a materialman of a Government contractor and to whom an unpaid balance is due from the materialman can recover on the payment bond executed by the contractor. The Court held that he cannot. There can be no mistake that the Supreme Court feels that the Miller Act is entitled to a liberal interpretation. For instance, in referring to the Heard Act, which was the predecessor of the Miller Act, the Court said:

"The Heard Act, which was the predecessor of the Miller Act, required Government contractors to execute penal bonds for the benefit of 'all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract.' We consistently applied a liberal construction to that statute, noting that it was remedial in nature and that it clearly evidenced 'the intention of Congress to protect those whose labor or material has contributed to the prosecution of the work.' * * * We accordingly held that the phrase 'all persons supplying (the contractor) * * * with labor and materials' included not only those furnishing labor and materials directly to the prime contractor but also covered those who contributed labor and materials to subcontractors. * * * We had no occasion, however, to determine under that Act whether those who merely sold materials to materialmen, who in turn sold them to the prime contractors, were included within the phrase and hence entitled to recover on the penal bond.

"The Miller Act, while it repealed the Heard Act, reinstated its basic provisions and was designed primarily to eliminate certain procedural limitations on its beneficiaries. There was no expressed purpose in the legislative history to restrict in any way the coverage of the Heard Act; the intent rather was to remove the procedural diffi-culties found to exist under the earlier measure and thereby make it easier for unpaid creditors to realize the benefits of the bond. * * *.

   *   *   *   *   *   *

"The Miller Act, like the Heard Act, is highly remedial in nature. It is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects. * * *"

Finally, the Court stated:

"The ultimate question in this case, therefore, is whether Miller, the materialman to whom Tomkins sold the goods and who in turn supplied them to MacEvoy, was a subcontractor within the meaning of the proviso. If he was, Tomkins' direct contractual relationship with him enables Tomkins to recover on MacEvoy's payment bond. If Miller was not a subcontractor, Tomkins stands in too remote a relationship to secure the benefits of the bond.

"The Miller Act itself makes no attempt to define the word 'subcontractor.' We are thus forced to utilize ordinary judicial tools of definition. Whether the word includes laborers and materialmen is not subject to easy solution, for the word has no single exact meaning. In a broad, generic sense a subcontractor includes anyone who has a contract to furnish labor or material to the prime contractor. In that sense Miller was a subcontractor. *But under the more technical meaning, as established by usage in the building trades, a subcontractor is one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract, thus excluding ordinary laborers and materialmen.* To determine which meaning Congress attached to the word in the Miller Act, we must look to the Congressional

history of the statute as well as to the practical considerations underlying the Act. [Emphasis supplied]

"It is apparent from the hearings before the subcommittee of the House Committee on the Judiciary leading to the adoption of the Miller Act *that the participants had in mind a clear distinction between subcontractors and materialmen.* * * *" (Emphasis supplied.)

After quoting from the Congressional hearings the Court stated:

" * * * The fact that subcontractors were so consistently distinguished from materialmen and laborers in the course of the formation of the Act is persuasive evidence that the word 'subcontractor' was used in the proviso of Section 2(a) in its technical sense so as to exclude materialmen and laborers."

The Court concluded that Miller was not a contractor. Accordingly, Tomkins stood in too remote a relationship to secure the benefits of the bond.

In the instant case, the plaintiff, the third subcontractor, performed two contracts, one for the erection of a bunker, the other for the erection of a stiff leg post and three bridle posts, both of which were an actual part of the Tobyhanna job and were performed on the site by the plaintiff. It seems to me that plaintiff certainly qualifies under the wording of the MacEvoy case as one of "the relatively few subcontractors who perform part of the original contract" and who accordingly "represent in a sense the prime contractor and are well known to him." The plaintiff here was not "an ordinary materialman."

■ I find nothing in the Act which would preclude a subcontractor actually performing on the site an integral part of the main contract which was the responsibility of the prime contractor from the beneficent provisions of this Act. As a matter of fact, a study of the legislative history of this Act taken with the expressed view of the Supreme Court in the MacEvoy case that it is to be

given a liberal interpretation convinces me that this third subcontractor plaintiff is within the group entitled to protection under the Act.

Defendants' motion to dismiss the complaint is accordingly refused.