**BROWN & ROOT, INC., Appellant-Appellee,**

v.

**GIFFORD-HILL & COMPANY, Inc., Appellee-Appellant.**

No. 20220.

United States Court of Appeals
Fifth Circuit.

June 19, 1963.

Rehearing Denied July 30, 1963.

Nauman S. Scott, Alexandria, La., William A. Brown, Houston, Tex., Provosty, McSween, Sadler & Scott, Alexandria, La., Powell, Brown & Maverick, Houston, Tex., for appellant-appellee Brown & Root, Inc.

John L. Pitts, Alexandria, La., for appellee-appellant.

Before HUTCHESON and GEWIN, Circuit Judges, and CONNALLY, District Judge.

CONNALLY, District Judge.

The appellant Brown & Root was the prime contractor, with the U. S. Army Engineers, for the construction of certain locks upon the Mississippi River re-

ferred to as the Old River Navigation Locks. Brown & Root contracted with Lake Pearl Sand & Gravel Co. to purchase its sand and gravel needs from that company. Most of the materials were available to Lake Pearl from its own pits, but it was necessary that Lake Pearl purchase gravel to meet certain specifications from appellee Gifford-Hill & Co., Inc. It is the purchase price of this gravel which gives rise to the present controversy. Under terms of the Lake Pearl-Gifford-Hill agreement, Lake Pearl purchased the gravel at Gifford-Hill's pits for $2.00 per yard, on open account. It thereupon hauled the gravel a distance of approximately 50 miles to the Brown & Root job site, where it was delivered to Brown & Root for $4.43.

During the course of the construction, Lake Pearl fell into financial difficulties and was unable to meet its obligations. Gifford-Hill and other creditors made claim against Brown & Root, and its bondsmen, under provisions of the Miller Act (§ 270a of Title 40, U.S.C.A.). Thereupon Brown & Root instituted an interpleader action whereby all such claims might be asserted in a single proceeding. Gifford-Hill was named a defendant, and by way of cross-action asserted the present claim in that proceeding. Alternatively, Gifford-Hill alleged a cause of action against Brown & Root for breach of oral contract as hereinafter set out. There is no diversity of citizenship between Brown & Root and Gifford-Hill, and the trial court had jurisdiction to consider this alternative cause of action as ancillary to the primary claim, if at all.

During the early stages of Lake Pearl's delinquencies, Brown & Root had discussed the problem with a number of Lake Pearl's suppliers, including Gifford-Hill. It had worked out new agreements with many of such suppliers whereby Brown & Root paid such parties directly. Gifford-Hill did not accept such proposal, however, and continued to make deliveries under its original contract to Lake Pearl on open account.

On September 13, 1960, Lake Pearl had become in arrears in its payment to Gifford-Hill to such extent that the latter ceased making delivery. This, of course, interrupted the flow of gravel necessary to Brown & Root. The Brown & Root project manager, Quillen, spoke by long distance telephone to the Gifford-Hill vice president, Wilson, on September 15, 1960, with regard to the problem. It was during the course of this conversation that the oral contract allegedly was made.

### The Miller Act Claim

■ The trial court denied Gifford-Hill recovery on its statutory claim. This was based on the holding that Lake Pearl was no more than a materialman to Brown & Root, as distinguished from a subcontractor, and that the benefits of the Miller Act were unavailable to the Lake Pearl suppliers, citing MacEvoy Co. v. United States, 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163. Appellee Gifford-Hill has cross-appealed seeking reversal of this holding of the trial court. We affirm the trial court ruling. United States for Use and Benefit of Newport News Shipbuilding & Dry Dock Co. v. Blount Brothers Construction Co., 168 F.Supp. 407 (D. C., Md.1958); McGregor Architectural Iron Co. v. Merritt-Chapman & Scott Corp., 150 F.Supp. 323 (D.C., Penn.1957); and United States for Use of Potomac Rigging Co. v. Wright Contracting Company, 194 F.Supp. 444 (D.C., Md. 1961).

### The Breach of Contract Claim

Following the phone conversation of September 15, 1960, during which Gifford-Hill alleges that the oral contract was reached, neither party made a written memorandum thereof, nor did either confirm the oral agreement by written communication to the other. The evidence is uncertain, conflicting and unsatisfactory as to the terms of the oral agreement, although an agreement of some character undoubtedly was reached, for Gifford-Hill immediately resumed deliveries to Lake Pearl, and Lake Pearl continued to haul the material to the job site. This arrangement continued until

November 2, 1960. By that date Gifford-Hill declined to make further sales to Lake Pearl, and entered into an agreement with Brown & Root, acting through a subsidiary, for the direct sale of the gravel to the Brown & Root subsidiary at the regular price of $2.00 per yard. Brown & Root has paid Lake Pearl in full. It has paid Gifford-Hill for all the gravel delivered pursuant to the agreement of November 2, 1960. It has also paid Gifford-Hill an amount sufficient to cover all deliveries after September 15, save for a few hundred dollars. Hence the real controversy is over the balance owed to Gifford-Hill by Lake Pearl for deliveries before September 15.

As to the terms of the oral contract, Gifford-Hill contends that Brown & Root agreed unqualifiedly to assume Lake Pearl's entire obligation, that is, not only to pay for future deliveries, *but to guarantee payment of the Lake Pearl indebtedness theretofore incurred.*

Brown & Root's contentions are quite to the contrary. Quillen's testimony was substantially to the effect that Wilson simply expressed apprehension over Lake Pearl's continued delinquencies, and asked Brown & Root's assistance in bringing the account to a current status. He denies that there was any guaranty of the Lake Pearl account, though he testified that he offered to pay directly for future deliveries if Gifford-Hill desired to deal in that manner with Brown & Root as other Lake Pearl suppliers had been doing; but that Gifford-Hill declined this offer.

There are many circumstances which tend to support the Brown & Root version. (1) A few days following the conversation of September 15, Wilson called upon Quillen and advised that $16,234 was required to bring the Lake Pearl account current. Quillen ascertained that Brown & Root owed Lake Pearl, by way of progress payments, an amount slightly in excess of this figure, and with the consent of Lake Pearl paid the $16,234 to Gifford-Hill. This was accomplished by means of a check naming both Gifford-Hill and Lake Pearl as payees, and clear-ly marked as a progress payment *under the Brown & Root-Lake Pearl contract.* (2) During the interval September 15-November 2, Gifford-Hill continued to carry the account on its books in the name of Lake Pearl, as it had before. (3) Further in support of the Brown & Root version that Gifford-Hill did not seek, nor receive, a guaranty of the Lake Pearl account is the fact—quite evident from the entire record before us—that Gifford-Hill at all times prior to the trial court's judgment placed primary reliance to collect its full recovery on its Miller Act claim against Brown & Root and its sureties. The contract action seems to be something of an afterthought.

Nevertheless the trial court adopted the Gifford-Hill version, and allowed recovery for the balance due Gifford-Hill by Lake Pearl. This action raises a number of substantial questions.

■ First, it is forcefully urged by Brown & Root that there is insufficient evidence to support the trial court's finding in this regard. There is, however, testimony from the witness Wilson which gives support to this version, as well as certain circumstances pointed out in the findings of the trial court. We are of the view that the findings are not clearly erroneous and that there is sufficient evidence to warrant the finding of the trial court that Brown & Root agreed to guarantee the Lake Pearl obligation.

■ Second, Brown & Root questions the jurisdiction of the court to consider the contract claim. Federal jurisdiction originally was based on the presence of a federal question, namely, the Miller Act claim. Both Brown & Root and Gifford-Hill are Texas corporate citizens and there is no diversity of citizenship. On determination by the trial court that the Miller Act claim was ill-founded, it is argued that the action should have been dismissed. The question is controlled by Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, and the cases which follow it. Under the teachings of these authorities, we hold that the court was vested with pendent jurisdiction, and could determine the contract action. Gif-

ford-Hill asserted a single cause of action against Brown & Root, to recover for the gravel furnished. Recovery sought under terms of a federal statutory cause of action, or under a common law theory of contract breach, are no more than different avenues seeking to reach the same end. They constitute alternative theories of recovery for a single alleged wrong. The Miller Act claim was not frivolous or unsubstantial. It was asserted and prosecuted in good faith. Thus, the court not only might determine that claim, but others arising from essentially the same facts in seeking recovery from some of the same parties for the same materials. Strachman v. Palmer (1 Cir. 1949), 177 F.2d 427, and cases cited there; 1 Cyclopedia of Federal Procedure § 2.238 (3rd ed. 1951); 1 Barron and Holtzoff, Federal Practice and Procedure § 23 (1960).

The third point questions the admissibility of the evidence of the oral contract of September 15 in the light of the Louisiana statute of frauds. We are of the view that the evidence might not be considered, and that the judgment must be reversed.

Article 2278 of the LSA–Civil Code reads in part as follows:

"Parol evidence shall not be received * * * (3) To prove any promise to pay the debt of a third person."

Appellee urges that an exception has been engrafted upon the statute by judicial decisions, citing Watson Bros v. Jones, 125 La. 249, 51 So. 187; Rube v. Pacific Insurance Company of New York, La.App., 131 So.2d 240; Hornsby v. Rives, La.App., 2 So.2d 532; and Fuselier v. Hudson, La.App., 93 So.2d 266. The exception, as urged by appellee, is to the effect that where the promisor is motivated by some self-interest, or receives some consideration for his promise, the statute does not apply and the oral agreement is sufficient. The cases cited, in our judgment, do not warrant such a broad statement of the "exception" to the statute. Rather, these cases distinguish between the undertaking by the promisor of a primary obligation to pay a debt, making it his own—where, obviously, the statute does not apply—and the contrary situation, where the promisor agrees to pay *if the primary obligor does not*. The latter constitutes in agreement of suretyship and under the statute must be in writing.

The leading case in Louisiana dealing with the question is Watson Bros. v. Jones, supra, decided by the Supreme Court of that state in 1910. It is almost uniformly cited in subsequent opinions dealing with the question, and is relied upon by both parties here. There a landlord instructed the proprietor of a mercantile store to sell goods on account to the landlord's tenant. The tenant did not pay, and recourse was sought against the landlord. The statute of fraud was interposed as a defense. The Supreme Court of Louisiana draws the clear distinction between an obligation of suretyship, on the one hand, and an obligation of the promisor to pay directly, though the goods might be delivered to another. In the course of its opinion, the court said:

"There can be no objection to one's contracting to pay for goods to be delivered, whether to the obligor, or to a third person, and the obligation resulting from such a contract may be none the less a debt of the obligor because the third person, to whom the goods are delivered, also becomes bound for the price. If the condition of the contract is that the obligor is to pay for the goods only in the event that the person to whom they are to be delivered does not, then the latter is to be regarded as the principal debtor, and the contract is a collateral one, of suretyship, in which the obligor would be regarded as binding himself for the debt of another, and which could not be proved by parol evidence. * * *

"In this case, however, the petition alleges that defendant's obligation to pay for the goods was absolute, and we do not think that the effect of the allegation on that subject is, necessarily, destroyed by the further

allegation that the goods were sold and delivered to Pierson (the tenant), for, it will be observed, it is also alleged that they were so delivered * * * under a contract whereby Jones (the landlord) had bound himself, unconditionally, to pay for them."

Similarly, in National Materials Co. v. Guest, La.App., 147 So. 771, the court stated:

"* * * a plaintiff may by oral evidence establish liability in a defendant for merchandise delivered to a third person, if the said defendant can be shown by parol to have promised to pay the debt as his own absolute and primary obligation and has not made his promise conditional upon the failure of the third person to pay."

Very similar to Watson Bros. v. Jones, supra, and reaching the same result, is Hornsby v. Rives, supra.

While there is language in Fuselier v. Hudson, supra, and B & B System v. Everett, La.App., 34 So.2d 521, tending to support appellee's contention, a careful examination of those cases shows that the holdings do not go so far, and that the distinction so carefully drawn in Watson Bros. v. Jones, supra, is recognized.

In the instant case, the facts as set out above show that the promise of Brown & Root to pay Gifford-Hill, at best, was no more than a promise to pay *if Lake Pearl did not*. Lake Pearl at all times (prior to November 2) was recognized by all concerned as the primary obligor whose default led to the collateral agreement. The trial court found that the oral contract was one "guaranteeing" payment for the material. (Finding 9, Tr., p. 530)

The agreement of Brown & Root having been one of guaranty only, the nature and effect of such agreement is not altered because Brown & Root was interested in the resumption of the deliveries of gravel.

If the statute of fraud is held to apply only where a promisor guarantees the debt of another in a transaction in which the promisor is completely uninterested, the statute is effectively destroyed. Completely uninterested persons do not guarantee the debts of others.

Cases from other jurisdiction are to the same effect. Mazotta v. Gora, 19 Conn. Sup. 96, 110 A.2d 295 (Ct.C.P.1954); Collins v. Abrams, 276 Mass. 106, 176 N.E. 814 (1931); Witschard v. Brody & Sons, 257 N.Y. 97, 177 N.E. 385 (Ct.App. 1931); Citizens State Bank v. Schulte, 123 Kan. 119, 254 P. 381 (1927); Peterson v. Paxton-Pavey Lumber Co. of Florida, 102 Fla. 89, 135 So. 501 (1931); Housley v. Strawn Merchandise Co., 291 S.W. 864 (Tex.Com.App.1927); Fletcher v. Puckett, 170 S.W. 831 (Tex.Civ.App. 1914); Henderson & Dempsey v. Skinner, 146 S.C. 281, 143 S.E. 875, 59 A.L.R. 174 (1928).

It follows that appellee may not recover under terms of the oral contract. The judgment of the trial court in appellee's favor is Reversed and judgment is here rendered in favor of appellant.