UNITED STATES for the Use of POWERS REGULATOR COMPANY, Plaintiff,

v.

FARINA CONSTRUCTION CORPORATION, Hartford Accident & Indemnity Co., and DeGroot Heating, Inc., Defendants.

Civ. A. No. 65–38–C.

United States District Court
D. Massachusetts.

Dec. 6, 1966.

Thomas L. Mackin, Boston, Mass., for plaintiff.

Michael J. Glazerman, of Peabody, Arnold, Batchelder & Luther, Boston, Mass., for Hartford Accident, Samuel H. Cohen, Boston, Mass., for New Amsterdam Casualty Company.

## OPINION

CAFFREY, District Judge.

This case came on for trial to the Court and after trial I find and rule as follows:

Defendant Farina Construction Corporation (Farina) entered into a contract with the United States, acting through the Corps of Engineers, for certain construction work at an animal laboratory facility located in Natick, Massachusetts. Farina furnished the performance and payment bonds required by the Miller Act (40 U.S.C.A. §§ 270a–270e). The surety on these bonds was defendant Hartford Accident & Indemnity Company (Hartford). Farina executed a subcontract with a corporation named Edward DeGroot, Inc. (Edward), under the terms of which Edward was to perform certain heating, ventilating and air-conditioning work required by the prime contract between Farina and the United States. Edward furnished performance and payment bonds in connection with this subcontract. The third party defendant, New Amsterdam Casualty Company, was the surety on these bonds, which ran in favor of Farina.

Thereafter, Edward entered into a subcontract with defendant DeGroot Heating, Inc. (Heating) which called for the performance of certain heating, ventilating and air-conditioning work covered by the Farina-Edward subcontract. Finally, Heating executed still another subcontract with plaintiff Powers Regulator Company (Powers) under the terms of which Powers was to provide and install an automatic temperature control system at the animal laboratory at a cost of $18,595.

Thus Farina was the prime contractor with the Government, it had a subcontract with Edward, Edward in turn had a subsubcontract with Heating, and, finally, plaintiff Powers had a contract with Heating thrice removed from the prime contract.[1]

The first issue to be resolved, and by agreement the only issue as to which evidence was adduced at the trial, is whether or not a subcontractor thus thrice removed from the prime contractor may maintain a direct action under the Miller Act against the surety on the prime contractor's payment bond. It might be noted that Edward and Heating both went into bankruptcy in 1964 and Farina went into bankruptcy in 1965.

The general rule which obtains is that a third level subcontractor (a sub sub sub) stands in too remote a position from the prime contractor's surety to be able to successfully assert a claim against that surety. MacEvoy v. United States, f/u/b/o Calvin Tomkins Co., 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1943); United States v. Frederick Raff Co., Inc., 271 F.2d 415 (1st Cir. 1959); United States f/u/b/o Jonathan Handy Co. v. Deschenes Const. Co., 188 F.Supp. 270 (D.Mass.1960). Counsel for plaintiff urges that there is minority authority for the contrary position, citing United States f/u/b/o Marysville Tractor & Equipment Co. v. Pinole Land Co., D. C., 171 F.Supp. 87, 88, and McGregor A. Iron Co. v. Merritt-Chapman & Scott Corp., 150 F.Supp. 323 (M.D.Pa.1957). Plaintiff urges, however, that even under the majority rule it is entitled to recover if it can show that one of the subcontractors was merely a sham or an alter ego of another of the subcontractors, and that these two alter egos have purported to contract with each other, citing Fine v. Travelers Indemnity Co., 233 F.Supp. 672 (W.D.Mo.1964), and Continental Casualty Co. v. United States, f/u/b/o Conroe Creosoting Co., 308 F.2d 846 (5th Cir. 1962). Applying this latter argument to the alleged facts in the instant

---

1. A sub-sub-subcontract?

case, plaintiff says that Edward and Heating are the alter egos of each other and that, therefore, this is an appropriate case for application of the doctrine of piercing the corporate veil and thereby reducing plaintiff's remoteness from the payment bond.

An examination of the evidence adduced at the hearing indicates that the following points of similarity did exist as to the two companies. The word "DeGroot" appeared in both corporate names. Edward DeGroot was the Treasurer and Max Cohen the Clerk of both corporations. Both were located at the same address. Finally, in their inter-corporate dealings they did not execute formal written contracts although they did use written purchase orders.

Arrayed against these similarities is the following evidence tending to show that these two corporations were in fact *bona fide* separate entities:

1. Each corporation kept separate books and records.

2. Each maintained a separate payroll and each filed its own state and federal tax returns.

3. Each employed a different individual as bookkeeper.

4. Each corporation often bid separately on various plumbing and heating jobs.

5. Edward was formed in 1954 by Edward DeGroot and his wife and they owned all the stock therein.

6. Heating was formed in 1961 and was capitalized primarily by a Mrs. Perkins who invested $5,000 therein and received a one-third interest, and by Harry Gloss who invested $5,000 and received a one-third interest therein. Edward DeGroot was only a minority stockholder in Heating, owning the remaining one-third interest.

7. Edward DeGroot's wife was President of Edward.

8. Harry Gloss was President of Heating.

9. Letters were written back and forth between the two corporations concerning their various business transactions.

10. Finally, it appears that Edward had a labor relations contract with the plumbers' union covering plumbing work to be done by its employees. It did not have any contract with the steamfitters' union. On the other hand, Heating had a labor relations contract with the steamfitters' union but did not have a contract with the plumbers' union.[2]

■■■ On the basis of the above-summarized evidence, I find and rule that neither Edward nor Heating was a sham or dummy corporation, that neither acted as the alter ego of the other, that both were validly organized and separately existing Massachusetts corporations, and that the separate existence and identity of these companies might well have been determined by plaintiff from documents on file in the office of the Secretary of State of the Commonwealth which were admitted in evidence at the trial, had plaintiff taken the trouble to cause a credit check to be run on Heating before contracting with it, which it failed to do. Consequently, this is not a proper case for "piercing the corporate veil," and I rule that plaintiff lacks standing to maintain this action against defendant Hartford because it has not shown itself to be a subcontractor within the meaning of the Miller Act. United States f/u/b/o Jonathan Handy Co. v. Deschenes Const. Company, supra.

Complaint dismissed.

2. It appears that the fact that the subcontract between Farina and Edward called for both work within the jurisdiction of the plumbers' union and work within the jurisdiction of the steamfitters' union was the very reason which necessitated the subcontract between Edward and Heating.