UNITED STATES of America for the Use of INDUSTRIAL LUMBER COMPANY, INC., Plaintiff-Appellee,

v.

F. D. RICH CO., INC., and Transamerica Insurance Co., a corporation, Defendants-Appellants.

UNITED STATES of America for the Use of INDUSTRIAL LUMBER COMPANY, INC., Plaintiff-Appellant,

v.

CERPAC, INC., et al., Defendants-Appellees.

Nos. 71-1485, 71-1519.

United States Court of Appeals, Ninth Circuit.

Jan. 22, 1973.

Ronald N. Paul (argued), of Downey, Brand, Seymour & Rohwer, Sacramento, Cal., Lawrence Gochberg, Stamford, Conn., for defendants-appellants.

Dennis Harlowe (argued), E. M. Murray, Dale L. Carlisle, of Gordon, Thomas, Honeywell, Malanca, Peterson, O'Hern & Johnson, Tacoma, Wash., W. Austin Cooper, of Cooper, Sarkisian & Sands, Sacramento, Cal., for Gordon, Thomas, Honeywell, Malanca, Peterson, O'Hern & Johnson, Tacoma, Wash., for the appellee.

Before BROWNING, CARTER and WRIGHT, Circuit Judges.

JAMES M. CARTER, Circuit Judge:

This is an appeal by F. D. Rich Co., Inc. (hereafter Rich) from a judgment in favor of Industrial Lumber, Inc. (hereafter Industrial), a building materials supplier, against Rich, a prime contractor on a government construction project, and Transamerica Insurance Co., his surety under the Miller Act, 40 U.S.C. §§ 270a–270d (1970). There is also a cross-appeal by Industrial, for interest on unpaid invoices, and attorneys' fees.

The issues presented on the appeal are:

(1) Was Cerpac, the intermediary who furnished plywood (and, under another agreement, certain millwork), a "subcontractor" for Miller Act purposes?

(2) Does the agreement of Rich, the prime contractor, to pay Industrial, the plywood supplier, directly, rather than through the intermediary Cerpac, for the last two shipments under the contract, preclude consideration of those two shipments as the "last material for which claim is made" to establish timeliness of the Miller Act notice?

(3) Is venue proper in California for shipments supplied pursuant to a contract to be performed there, but diverted to South Carolina with the knowledge of all parties?

The issues presented on the cross-appeal by Industrial are:

(4) Should pre-judgment interest have been awarded to Industrial at 8 percent, as stated in the invoices, rather than at 7 percent for unliquidated claims pursuant to California statute?

(5) Should attorneys' fees have been awarded to Industrial under federal law, for this California claim?

On the appeal, we affirm the District Court's judgment for the plywood supplier, Industrial, against Rich and against Transamerica Insurance Co., except as to two shipments diverted to South Carolina. On the cross-appeal, we reverse and direct that Industrial be awarded interest at 8 percent, plus reasonable attorneys' fees, as detailed below. It is first necessary to summarize the salient facts.

*Facts*

From 1961 through 1968, appellant Rich built numerous federal housing projects, and during 1963–1966, Cerpac furnished most, if not all, of the millwork and plywood for these projects. Cerpac's president, Cervi, had close relationships with Rich, its officers and personnel. Principals of Rich held a substantial voting interest in Cerpac stock, were completely familiar with its operations and financial condition, and supplied a substantial share of its working capital.

On October 18, 1965, Rich contracted with the United States to build family housing at Beale Air Force Base, California. Rich's surety, appellant Transamerica, posted the required payment bond under the Miller Act, 40 U.S.C. § 270a. Rich awarded Cerpac two contracts, one for all custom millwork, and one for all exterior plywood, each incorporating by reference terms of the prime contract. These contracts were similar to those which previously had been completed between the parties on other jobs over the years.

On February 22, 1966, Cervi placed a single order with appellee Industrial for all exterior plywood required by Rich at Beale, designating the order as "Beale 647." Industrial then ordered the plywood from its own suppliers, assigned order numbers to specific shipments to be used as necessary, and designated its mill orders as contract "Beale 647." The shipments to Rich at Beale began approximately March 10, 1966, and as each truckload arrived it was receipted for by a Rich representative.

Shortly thereafter, Rich told Cervi that more plywood was needed for another government project at Charleston, South Carolina, in which the two had similar relationships. Industrial was so advised, and obtained approval from the mill. For the convenience of Rich and Cerpac, then, two truckloads of plywood, still designated as "Beale 647," were delivered to Innes, South Carolina, and used on the Charleston project.

During April and May, 1966, Cerpac fell behind in its payments to Industrial for the plywood shipments, and Cervi was told that Industrial would not deliver the final two truckloads until assurances of payment were given. The parties subsequently agreed that Rich would pay Industrial directly for the last two shipments, with Cerpac to receive its customary profit as a commission from Industrial. The last two shipments arrived at Beale on May 16 and June 23, 1966. The invoices for these shipments, as all Industrial invoices herein, were payable in full in 30 days, with annual interest of 8 percent after the due date.

On July 13, 1966, having received no payment on nine separate invoices, Industrial formally gave Rich and Transamerica, the surety, a written notice of claim under the Miller Act, and thereafter timely brought this action. Cerpac filed in bankruptcy in October 1966, and is not a party to this appeal. The nine specific invoices were part of the extensive evidence considered by the trial court, which made detailed findings of fact and conclusions of law. Except as otherwise noted herein, our review shows that those findings and conclusions were correct.

The District Court gave judgment for Industrial against Transamerica on the bond, and against Rich and Cerpac as primary obligors, all jointly and severally for the amount of all nine unpaid invoices, $31,402.97, plus 7 percent interest from March 13, 1967, to the date of judgment ($7,974.70), plus costs. Rich appeals the award, and Industrial cross-appeals on questions of interest and attorneys' fees.

### Was Cerpac a Subcontractor?

The Miller Act provides that those who furnish material for government work for which a bond has been given under 40 U.S.C. § 270a, may sue on that bond.

". . . *Provided, however,* That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made. . . ." *Id.*, § 270b(a).

■ It is undisputed that Rich had a direct agreement with Industrial only as to payment for the two final shipments of plywood. Unless that agreement extends to the previous shipments as well, and we are not convinced that it did, Industrial cannot recover for them unless it can show that Cerpac was a "subcontractor" under the Act, and the strict requirements of the Act are otherwise met. *See* Fidelity & Dep. Co. of Md. v. Harris (9 Cir. 1966) 360 F.2d 402, 410. One who furnishes materials to a supplier (as opposed to a subcontractor) has no rights under the Miller Act. Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins Co., 322 U.S. 102, 104, 64 S.Ct. 890, 88 L.Ed. 1163 (1944).

In *MacEvoy*, the Supreme Court stated the following definition:

"[A] subcontractor is one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract, thus excluding ordinary laborers and materialmen." 322 U.S. at 109, 64 S.Ct. at 894.

The Court held that Congress cannot be presumed to have intended liability on a payment bond in situations where it is difficult or impossible for the prime contractor to protect himself. It is easy for him to secure payment by a bond when there are relatively few subcontractors who are well known to him, and who represent him in a sense. But it is too great a risk to extend the primary's liability to the remote and undeterminable liabilities incurred by ordinary materialmen. *Id.* at 110, 64 S.Ct. 890, 88 L.Ed. 1163.

■ In Basich Bros. Const. Co. v. United States ex rel. Turner (9 Cir. 1946) 159 F.2d 182, we held that a subcontractor who performed all the labor and supplied all materials for completion of certain specified work, in accordance with the terms of the prime contract, was a subcontractor within the above definition. The distinction between subcontractors and materialmen turns on the substantiality and importance of the relation between the middle party and the prime contractor. Aetna Cas. & Sur. Co. v. United States ex rel. Gibson Steel Co. (5 Cir. 1967) 382 F.2d 615, 617. One is not a subcontractor if "[t]here was no material delegation of the job the prime contractor was obligated to perform under the prime contract." United States ex rel. Bryant v. Lembke Const. Co. (10 Cir. 1966) 370 F.2d 293, 296.

■ Bearing these principles in mind, we conclude that Cerpac was a subcontractor to Rich, and therefore that under the Miller Act, Industrial could properly claim for the payments herein involved. In *Lembke, supra,* one

who supplied all the concrete required for a job, under a "Standard Form of Material Contract," was held to be a materialman. *Id.* at 295–297. Here, we have no such form of contract. In *Lembke,* the concrete was in no way "customized," and there was no delegation of the prime contractor's obligations under the prime contract. *Id.* In our case, although the plywood Cerpac was to supply to Rich was simply ordered from Industrial and delivered without any further alteration or special selection, we cannot base our decision solely upon that one transaction.

A contract between the parties, other than the one claimed upon, is material to the inquiry whether one is a subcontractor. Travelers Indem. Co. v. United States ex rel. Western Steel Co. (9 Cir. 1966) 362 F.2d 896, 898. Here, Cerpac had also contracted to supply, detail, and install all millwork for the Beale project. Unlike *Lembke,* where the materialman merely delivered concrete, 370 F.2d at 295, in our case Cerpac selected, modified, and installed the millwork, all of which involved substantial services to the owner of the project, the United States. This was "a specific part of the labor or material requirements of the original contract" under *MacEvoy, supra,* and rendered Cerpac a subcontractor for Miller Act purposes.

Unlike, *Lembke,* supra, we have here no findings below that the two contracts were separately treated by the construction industry, as well as by the parties involved. Cerpac and Rich had previously engaged in many similar projects, with Cerpac performing similar kinds of detailed work. Officers of Rich had substantial financial involvement in and control over Cerpac.

Therefore, under *MacEvoy, supra,* Cerpac was not one of the "ordinary . . . materialmen" supplying Rich, but was in a special, integral, almost symbiotic relationship to Rich. Cerpac's relationship was both "substantial and important," *Aetna Cas. & Sur. Co., su-*

*pra,* and there was a material delegation of the prime contractor's job, *Lembke, supra.* Rich and Cerpac had guilt government housing in many places over a substantial number of years. It would have been "easy for the prime contractor to secure himself against loss by requiring [Cerpac] to give security by bond, or otherwise . . ." *MacEvoy, supra,* 322 U.S. at 110, 64 S.Ct. at 895 (substituting the name of our party herein). The result here reached will not cause liability to be imposed for remote and undeterminable liabilities of materialmen little known to the prime contractor. *Id.*

### Miller Act Notice

The Act provides that within 90 days of the last furnishing of materials, those who have furnished supplies to subcontractors and who have no contractual relationship to the prime contractor must notify the prime contractor of their materialmen's claims. 40 U.S.C. § 270b(a), quoted *supra.* It is here urged that such notice was insufficient because Rich agreed directly with Industrial to pay for the last two shipments, and those two shipments are the only ones within the required 90 days of the notice given by Industrial. We disagree.

The notice must only be "within 90 days from the date on which he [claimant] performed the last labor or furnished or supplied the last material for which claim is made." United States ex rel. Austin v. Western Elec. Co. (9 Cir. 1964) 337 F.2d 568, 572; 40 U.S.C. § 270b(a), *supra.*

"[T]he test to be applied is whether the work was performed and the material supplied as a 'part of the original contract' or for the 'purpose of correcting defects . . . .'" *Western Elec. Co., supra,* 337 F.2d at 572–573.

In our case, it is apparent that all shipments were made under Industrial's plywood contract known as "Beale 647," and were furnished to Rich, at Beale or

elsewhere (two were diverted to South Carolina), under the designation "Beale 647." Although Rich was to pay Industrial directly for the last two shipments, and Cerpac was to receive a commission, the overall terms, despite their different form, were the same as for all other "Beale 647" shipments. The cost to Rich did not vary. We hold that the notice was sufficient and timely.

### Venue

The Miller Act provides that "Every suit instituted under this section shall be brought in . . . the United States District Court for any district in which the contract was to be performed and executed and not elsewhere . . . ." 40 U.S.C. § 270b(b). This requirement is not jurisdictional, but is a venue provision only. *See* United States ex rel. Capolino Sons, Inc. v. Electronic & Missile Facilities, Inc. (2 Cir. 1966) 364 F.2d 705, 707, cert. dism., 385 U.S. 924, 87 S.Ct. 239, 17 L.Ed.2d 148. We are urged to hold that Industrial should recover, if at all, only in South Carolina and not in California, for the two shipments which were delivered to Inness, South Carolina.[1]

Appellee Transamerica bonded Rich only for the Beale project, not for the one in South Carolina. It is settled that "the surety [is] liable only for material supplied in connection with the bonded project." United States ex rel. Carter-Schneider-Nelson, Inc. v. Campbell (9 Cir. 1961) 293 F.2d 816, 818, cert. denied, 368 U.S. 987, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962). Therefore, judgment against Transamerica is reversed and judgment is directed to be entered in its favor, as to the two shipments which were sent to and undisputedly used on the South Carolina job. This result is in accord with the general purpose of the Miller Act, to provide bonds in lieu of liens against the property and

buildings, because such liens cannot attach to government property. *See* Illinois Sur. Co. v. The John Davis Co., 244 U.S. 376, 380, 37 S.Ct. 614, 61 L.Ed. 1206 (1917), discussed *infra*.

But the same rule does not apply and we do not reach the same result with respect to Industrial's claim against Rich and Cerpac. These three parties agreed in California to ship the plywood to South Carolina, for Rich's and Cerpac's convenience, and pursuant to the "Beale 647" contract. When the question has been whether materials were actually used in a job, it has been held that the claimant need not so prove, "but only that in good faith he reasonably believed that the materials were so intended." United States ex rel. Westinghouse Elec. Sup. Co. v. Endebrock-White Co. (4 Cir. 1960) 275 F.2d 57, 60. In our case, Industrial could not have had such a belief, because it knew beforehand that the two shipments were for use in South Carolina and not at Beale.

But in *Endebrock-White Co., supra,* the question arose in the context of proof that certain materials were furnished at a time within 90 days of the notice given. That is not our question here. We are instead concerned with the express language of the statute, which requires Miller Act claims to be brought where "the contract was to be performed and executed." 40 U.S.C. § 270b(b), *supra*. Beale Air Force Base, as the lower court found is within the Eastern District of California. The shipments to South Carolina were made under the "Beale 647" contract, and at its terms. Industrial's recovery thereunder should not, we hold, be defeated merely because Rich and Cerpac had Industrial send the plywood outside the District for their own convenience. The Miller Act's provisions are remedial, and to be liberally construed. *MacEvoy, su-*

---

1. There is an action by Industrial pending in the District Court for South Carolina.

We, of course, express no opinion about it, but consider only the action before us.

*pra,* 322 U.S. at 107, 64 S.Ct. 890, 88 L. Ed. 1163.

■ Moreover, considerations of judicial economy and convenience warrant the course adopted here. The contract was executed and the parties did business thereunder in California, where also was located the remainder and larger share of Industrial's claim. No affirmative prejudice has been brought to our attention. We therefore affirm Industrial's recovery against Rich (Cerpac not being a party to this appeal).

### *Interest*

■ The District Court in its discretion awarded 7 percent interest for an *unliquidated* amount, under Calif. Civil Code § 3287(b), from the date of filing of the action. This was error. The amounts awarded Industrial were liquidated. Each element of damages was specified by invoice, at the contract price, and thus was at least reasonably calculable. Industrial should have been awarded 8 percent interest, under the terms of the invoices, from the date payment was due (30 days after delivery). *See id.,* § 3287(a); L & E Co. v. United States ex rel. Kaiser Gypsum Co. (9 Cir. 1965) 351 F.2d 880, 883. Any legal rate of interest stipulated by contract is chargeable after breach thereof. Calif. Civil Code § 3289.

### *Attorneys' Fees*

The Miller Act does not speak to the question whether prevailing parties may recover attorneys' fees as additional damages or costs, nor is there legislative history on the issue. *See* Transamerica Ins. Co. v. Red Top Metal, Inc. (5 Cir. 1967) 384 F.2d 752, 756 & n. 4.

■ In discussing another federal statute which gives a federal remedy but does not mention attorneys' fees, the Lanham Act, the United States Supreme Court held that such fees were not a part of the remedy thereunder. Fleisch-

mann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 87 S.Ct. 1404, 18 L. Ed.2d 475 (1967). The Lanham Act, however, provided for expressly specified elements of damages in the event of trademark infringement, such as recovery of defendant's profits, any damages sustained by plaintiff, and upward or downward adjustment of the calculated damages in the discretion of the court. 15 U.S.C. § 1117. The Supreme Court held that "When a cause of action has been created by a statute which expressly provides the remedies for vindication of the cause, other remedies should not readily be implied." *Id.* at 720, 87 S.Ct. at 1408. Several attempts to add attorneys' fees to the remedies listed in the Lanham Act had failed of passage in Congress. *Id.* at 721, 87 S.Ct. 1404, 18 L.Ed.2d 475. In our case, we have no such circumstances. *Cf.* Mills v. Electric Auto-Lite Co., 396 U.S. 375, 391, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); Lee v. Southern Home Sites Corp. (5 Cir. 1971) 444 F.2d 143, 145. The Miller Act, 40 U.S.C. §§ 270a–270d, *supra,* has a broadly remedial purpose:

> "The purpose of the act was to provide security for the payment of all persons who provide labor or material on public work. This was done by giving a claim under the bond in lieu of the lien upon land and buildings customary where property is owned by private persons. Decisions of this court have made it clear that the statute and bonds given under it must be construed liberally, in order to effectuate the purpose of Congress as declared in the act." Illinois Sur. Co. v. The John Davis Co., 244 U.S. 376, 380, 37 S.Ct. 614, 616, 61 L.Ed. 1206 (1917) (Brandeis, J.).

The language of the statute itself says that the "payment bond" is given "for the protection of all persons supplying labor and material in the prosecution of the work . . . ." 40 U.S.C. § 270a(a)(2). The right of action against

the bond [2] is given to eligible claimants "for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him . . . ." 40 U.S.C. § 270b(a).

The Act thus confers both the right "to prosecute said action to final execution and judgment," and to recover thereby "the sum or sums justly due." *Id.* These remedies are given "in lieu of the lien upon land and buildings customary where property is owned by private persons," *Illinois Sur. Co., supra,* because such liens cannot attach to federal land and buildings. The federal remedy was intended to substitute for the unavailable state remedy of the lien. Therefore, if state allows a supplier on private projects to recover such fees, there is no reason for a different rule to apply to federal projects, as stated in *Red Top Metal, Inc., supra,* 384 F.2d at 756:

> "The Miller Act itself reflects the Nation's interest in seeing that mechanics and materialmen engaged in work for the national government are protected at least as well as are those engaged in private work whom the state protects. It seems reasonable therefore to look to state policy to determine whether the 'protection' afforded by 'payment' [under the terms of the Act] encompasses full recoupment of all costs and damages, such as attorneys' fees."

The *Red Top Metal* court then looked to Texas law, held that attorneys' fees could not be recovered for private projects there, and so could not be had under the Miller Act. We, however, must look to the policy of California law.

In California, the state Court of Appeals has held that although attorneys' fees are recoverable under Calif. Gov't Code § 4207 in state actions on the bonds of public works contractors, that statute applies only to such bonds for state and local government-authorized jobs, and "has no application to private construction projects or to projects of the United States," B. C. Richter Contr. Co. v. Continental Cas. Co., 230 Cal. App.2d 491, 506, 41 Cal.Rptr. 98, 108 (1964).[3]

In so holding, we think the California court read their state's law into the federal law with unnecessary severity. The court looked only for a state statute expressly authorizing attorneys' fees for federal projects, and, not surprisingly, found none. We think that the opposite conclusion should be drawn. That is, the California statute awards attorneys' fees on projects covered by mandatory contractors' bonds. The federal Miller Act covers similar projects. Justice Brandeis noted that such bonds (be they federal or state), are given to protect suppliers in lieu of the liens which apply where property is privately owned. *Illinois Sur. Co., supra,* 244 U.S. at 380, 37 S.Ct. 614, 61 L.Ed. 1206.

Hence the federal and state law is congruent, each providing for bonds to protect materialmen in lieu of liens against government property, state or federal. *See* United States ex rel. Chevron Asphalt Co. v. Maryland Cas. Co. (E.D.Calif.1970) 316 F.Supp. 750, a well-reasoned opinion by Chief Judge MacBride, which we now approve in its general legal discussion. Judge Mac-

---

2. Jurisdiction in the District Court of the action against the prime contractor, Rich, rested on the doctrine of pendent jurisdiction. Brown & Root, Inc. v. Gifford-Hill & Co. (5 Cir. 1963) 319 F.2d 65, 67–68. The question was not raised on this appeal.

3. The *Richter* case involved the Capehart Act, which however is the same as the Miller Act in respect of attorneys' fees. *See* United States ex rel. Chevron Asphalt Co. v. Maryland Cas. Co. (E.D.Cal.1970) 316 F.Supp. 750, 751 n. 1.

Bride disapproved *Richter, supra,* as to federal law, and held that under the *policy* of California law, not its *letter,* attorneys' fees were recoverable in Miller Act cases, to be taxed as costs.

In summary, then, we hold that attorneys' fees may be recovered as costs in Miller Act cases wherein California law is the referent state law.[4] The trial court herein was sufficiently impressed with the issue of fees to make specific findings thereon, stating that "A reasonable and necessary fee, were one to be awarded, is 25% of the plaintiff's recovery of principal and interest, which sum would be added to plaintiff's judgment, if awarded."

We must uphold this finding on this appeal; we cannot hold that 25% of the award would constitute an unreasonable attorneys' fees. However, the District Court's finding was not made in light of our present holding that fees are definitely to be awarded, nor did that court consider the possibility of an increment for attorneys' fees on appeal. We express no opinion about such calculations at this time, but we leave the District Court free on remand to renew its consideration of the problem and to reaffirm or modify its specific award of attorneys' fees as justice may require.

### Conclusion

The judgment is affirmed in all respects as to the Rich appeal, except that it is reversed and judgment will be given for Transamerica as to the two shipments delivered to South Carolina. On Industrial's cross-appeal, the judgment is reversed and remanded for further proceedings consistent with this opinion.

4. Appellee Industrial urges us to retroactively apply Calif.Civil Code § 3250, which permits recovery of attorneys' fees on suits on contractors' bonds but was passed after the trial court's decision herein, and became effective January 1, 1971. *Cf.* United States ex rel. Hendry Corp. v. Smith Eng'r & Const. Co. (N.D.Fla.1965) 240

F.Supp. 189, rev'd on other grounds, sub nom. United States Fidel. & Guar. Co. v. Hendry Corp. (5 Cir. 1968) 391 F.2d 13, 21 (fees allowed for reasons stated by District Court). In view of the result we have otherwise reached, we express no opinion on this question.